MARIA L HOOD, AS EXECUTRIX, ETC., OF ANDREW HOOD, DECEASED, RESPONDENT AND APPELLANT, v. JOHN N. HAY- WARD, APPELLANT, IMPLEADED WITH FREDERICK HOOD.

*Action by an executor upon the bond of a co-executor, whose letters have been revoked, to recover money directed to be paid by the latter—an execution need not be issued against him— Code of Civil Procedure, sec. 2608—the power of the surrogate to direct the payment depends on the law in force when the decree is made—the participation of the plaintiff in the unlawful investments does not prevent him from recovering the money—effect of a release of one of two sureties upon the bond—the other surety will not be released if it is apparent from the face of the instrument that the person signing it did not intend to release him—interest should be charged against the surety from the date of the decree revoking the letters issued to the executor.*

This action was brought by the plaintiff, as executrix of the last will and testament. of Andrew Hood, on a joint and several bond given April 28, 1864, by Frederick Hood, deceased, as principal, with David Moffat and the defendant Hayward, as sureties, to the people, in the penalty of $20,000, conditioned that it should be void if Frederick Hood should faithfully execute the trust reposed in him, as an executor of Andrew Hood, and obey all orders of the surrogate of the county of Westchester touching the administration of the estate committed to him.

On December 7, 1883, letters testamentary which had been issued to Frederick were revoked by the surrogate, and on July 31, 1885, a decree was entered against him, upon his accounting, for some $31,795. Frederick having failed to pay this amount, the widow, as an executrix of the will, brought this action against him and the defendant Hayward to recover $35,000, " or so much thereof up to one-half the penalty of the bond, and interest from January 1, 1876, or for for such other relief, as may be proper." The complaint also alleged a decree, made on January 6, 1869, on an accounting, whereby it appeared that Frederick

Hood was then chargeable with $53,710.69, which he was directed to hold and invest, pursuant to the powers and directions contained in the will, and that he. had failed to thus invest the same and had otherwise misapplied the trust fund. The defendant Hayward contended that the action could not be maintained as no execution had been issued against Frederick Hood.

*Held,* that this contention could not be maintained, as the rule which was to be. applied in this case was contained in section 2608 of the Code of Civil Procedure,. which did not contemplate the issuing of an execution.

The defendant claimed that, at the time the bond was executed, the surrogate had. no power, under the statutes then in force, to' direct the payment of the money to the plaintiff, as executrix.

*Held,* that it was not necessary to inquire into the power of the surrogate under the· former statutes, as his power to make the decree for the payment of the money, at the time the decree was made, was not questioned, and the bond was not given with reference to the powers possessed by the surrogate at the time it was taken.

That the plaintiff's participation in the investments, which resulted in the loss to the estate, furnished no answer to her effort, as executrix, to recover the moneys from the sureties so long as it was not shown that the beneficiaries of the· plaintiff's trust had participated therein.

*It seems,* that if the plaintiff were insolvent, so that the defendant would be without other remedy, he might set up such participation on her part to the extent of her undivided interest in the fund.

The defendant Hayward claimed that he was discharged from all liability upon the bond by the fact that Moffat, the other surety, had been released without the· defendant's knowledge or consent. Upon the trial it was proved that the plaintiff, as executrix and individually, and all the other parties interested in the estate of the deceased, executed a sealed instrument, dated September 27, 1884, and acknowledged by them severally on or before November eleventh, which recited that $7,000 had been paid by Moffat, and purported in one part thereof to be a general release to him, containing a special reference to the bond in question and all liability of Moffat thereon, while a later clause reserved all rights against Frederick Hood and Hayward, no reference, however, being made to the statute· for the release of one or more joint-debtors. Another sealed instrument, dated in December and acknowledged the eleventh of that month by the same parties,. reciting the former release, declared that it was the intent of the parties to· release Moffat only and to satisfy only one-half the obligation of the bond, and that it should stand as a part of the first instrument, and that nothing therein· contained should affect the rights of any of the parties against Frederick Hood or Hayward. The uncontradicted proof showed that the two instruments were· delivered together after the execution of the second one.

*Held,* that it plainly appeared from the face of the instruments that the parties did not intend to satisfy the entire obligation of the bond, but only to satisfy one-half the liability created by it, and to discharge Moffat from his share of the· whole, leaving Hayward liable for his half.

That Hayward was not prejudiced by the execution of the release, as the only effect produced by it was to leave him liable for the sum for which he would·

have suffered loss in any event, that is to say, for one-half of the total liability of the two sureties.

*Benedict* v. *Rea* (35 Hun, 34); *Harrison* v. *Close* (2 Johns., 448); *Irvine* v. *Millbank* (56 N. Y., 635); *Bronson* v. *Fitzhugh* (1 Hill, 185) followed.

'The court charged the defendant Hayward with one-half the penalty of the bond, with interest thereon from December 7, 1883, the date when the surrogate found and adjudged that Frederick Hood had misused the trust fund and revoked his letters.

*Held*, that its decision should be affirmed, as it became his duty at that time to pay over the sum for which he was liable, irrespective of the time when he misappropriated it, or when the surrogate fixed the amount of it by his final decree on the accounting.

*Held*, further, that it was not necessary that the plaintiff should obtain leave to sue on such a bond.

APPEALS from a judgment, entered upon the trial of this action at the Westchester Special Term by the court without a jury.

The plaintiff appeals from so much of the judgment as refused to allow her interest from August 1, 1875, to October 1, 1878, upon the amount found to be due from the defendant Hayward, and the defendant Hayward appealed from the whole judgment.

*Roe & Macklin*, for the plaintiff.

*A. J. Dittenhoefer*, for the defendant.

PRATT, J.:

There are cross appeals in this case. The action was on a joint and several bond given April 28, 1864, by Frederick Hood, deceased, as principal, with David Moffat and defendant John N. Hayward, as sureties, to the people, etc., in the penalty of $20,000, conditioned that it should be void if Hood should " faithfully execute the trust reposed in him as such executor, and also obey all orders of the surrogate of the county of Westchester, touching the administration of the estate committed to him." The will made Frederick, one of the testator's sons, and Maria, his widow, executors. The letters to Frederick having been revoked December 7, 1883, and the surrogate having subsequently, on July 31, 1885, made decree against Frederick on his accounting for some $31,795 which he had failed to pay, the widow, as remaining executrix, brought this suit to recover $35,000 against him and defendant Hayward, " or so much thereof up to one-half the penalty of said bond and interest from January 1, 1876, or

for such other relief as may be proper." The complaint alleged a. decree on an accounting January 6, 1869, whereby it appeared that. Frederick was chargeable with $53,710.69 which he was directed to hold and invest pursuant to the powers and directions contained in the will, which was "on bond and mortgage on real estate in this State," and that he had failed thus to invest the same and had otherwise misapplied the trust fund. The will gave Maria, the widow, and remaining executor, certain rights as a legatee, and she sued on. the bond in her own right. Defendant demurred on the ground that she had no legal capacity to sue. The demurrer was sustained and she was allowed to amend by adding the proper description after her name "as executrix, etc., in her own right and in behalf of all persons interested in the estate," etc., in the title, and making corresponding allegations in the body of the documents.

It was by the complaint also alleged that David Moffat, the other surety, had been released to the extent of one-half the penalty of the. bond, reserving rights against the defendant Hayward, surety. Frederick, the principal, did not answer.

The answer of Hayward, among other things, alleged that the decree January 6, 1869, was an accounting by both Frederick and Maria, and that the balance was found in their hands, all parties. interested being parties to that decree. Also, that a decree was. made after the revocation of Frederick's. letters, whereby he was. directed to pay Maria, as executrix, $31,795, but denied any knowledge of a demand for its payment. He also plead that the decree January 6, 1869, discharged Frederick as executor, and that he thence held the money or property in his hands as trustee only under the will. Also, that all investments subsequent to the account. filed in January, 1869, were made by Frederick solely as such trustee, with plaintiff's knowledge and consent; also, that the decree of July 31, 1885, was made by the surrogate without affording Frederick any opportunity to be heard; that Moffat's release was without his (Hayward's) knowledge or consent; also, that Moffat had fully satisfied the bond; also, that no execution had ever been issued against Frederick; also, a misjoinder in that plaintiff was not. jointly interested with anybody in the cause of action; also, the pendency of an appeal by Frederick from the last decree on his accounting in the Court of Appeals; also, the pendency of a former

suit by Andrew Hood and Henry Hood, as plaintiffs, against Frederick and the sureties, and the present plaintiff as defendant, and covering the same course of action, and that the present plaintiff instigated that suit, but there was no allegation that she set up her present claim affirmatively in that suit; also, the ten year and six year limitation under the statute; also, the non-joinder of the other parties interested in the estate; also, as a counter-claim or set-off, that Maria acted with Frederick in the management of the estate and was liable with him, and that she was insolvent. The issues were tried before Mr. Justice DYKMAN at the Westchester Special Term, October, 1887, without a jury. He found for plaintiff $10,000, with interest at six per cent from December 7, 1883 (amounting to $2,390), the date of revocation of Frederick's letters, but refused plaintiff's request to charge interest from any earlier date. Plaintiff excepted to this refusal and appeals from the part of the judgment which refuses such interest. Defendant Hayward appeals from the entire judgment.

It is proposed to consider the material points presented by defendant, and we shall thus incidentally consider the plaintiff's exception about the interest.

1. The first point made by defendant is that Hayward was discharged by the release of Moffat. The instruments under which this release was accomplished were peculiar. An instrument *dated* September 27, 1884, was signed by plaintiff, as executrix and individually, and apparently by all other parties interested in the estate of deceased, acknowledged severally on or before November 11, 1884, reciting $7,000 paid by Moffat, purports in one part to be a general release to him and contains a special reference to the bond in question and all liability of Moffat thereon; but a later clause reserves all rights against Frederick and Hayward. It makes no reference to the statute for the release of one or more joint debtors. Another instrument, dated in December, 1884, acknowledged on the eleventh of that month by same parties, recites the former release, so-called, and *declares* that it was the intent of the parties to release Moffat only and to satisfy only one-half the obligation of the bond, and that it should stand as a part of the first instrument, and says that nothing *therein* contained shall affect the rights of any of the parties against Frederick or Hayward. Mr. Macklin, one

·of the attorneys for plaintiff, who participated in the transaction of the delivery of these instruments, testified that the first one was not delivered until after the second was signed, and that both were delivered together. This was not controverted by any other evidence. The finding is that the release was on the 27th of September, 1884, and it may be inferred that it was delivered at that time. Perhaps it is not important, but we note, in passing, that this was nearly two months before the last acknowledgment thereon. It may be observed, in the first place, that no element of tort was involved in the liability of Frederick as principal, and Moffat and Hayward as sureties on this bond. Frederick's liability, as *executor*, was for breach of his trust, but that was quite independent of the liability on the bond, which was purely on contract as security for the performance of the trust obligation. Moffat was in no way liable, except on the bond, and he was there jointly and severally liable with Frederick and Hayward. It was a general principle of the common law that an *unqualified* release of one or two or more persons, who were jointly and severally liable for a debt, would operate to discharge all of them. (*Bank of Poughkeepsie* v. *Ibbottson*, 5 Hill, 461, and cases cited.) It is said that this rule, in the present case, would have protected Hayward, who was a *co-surety* with Moffat, and entitled to contribution as among themselves. It is also said that there is no limitation on Moffat's release and discharge. There is an attempt in the first instrument to reserve the liability of Hayward, despite the discharge of Moffat, but that does not, in any way, limit or qualify the discharge of the latter. As to him the discharge is absolute and unqualified. It is said that it is a technical release as distinguished from a covenant not to sue. It was for less than one-half the liability of both sureties. This puts the defendant's case, in this respect, at its best. On the other hand, it is pertinent to inquire how this release to Moffat prejudiced Hayward. He was liable jointly and severally with Moffat for the whole of the principal's obligation, as executor, within the penalty of the bond. If Hayward had paid the whole of their joint liability, he could have recovered but one-half from Moffat, and the effect of the release is to hold him only for the sum for which he would have suffered loss in any event, that is to say, for one-half their total liability.

The case, therefore, seems to fall within the principle of *Benedict* v. *Rea* (35 Hun, 34). True, that was not the case of a technical release of one surety, but it was tantamount to that. Benedict, the plaintiff, had recovered a judgment against S. W. Benedict for deficiency on foreclosure. The latter appealed and Standring & Rea became his sureties in an undertaking on appeal to the General Term. The judgment was reduced by $460.15, and affirmed as to the balance. Then plaintiff orally agreed with Standring that the latter should purchase 110 acres of the land at not to exceed seventy-five dollars per acre, and convey it to plaintiff, in consideration of which plaintiff agreed that he would not sue Standring on the undertaking. This oral contract was fully performed, so that plaintiff's oral promise not to sue became valid, notwithstanding a possible defense under the statute of frauds. The plaintiff then sued Rea for one-half the deficiency and recovered. The court held that while this oral promise not to sue was not a technical release, still, since Standring would have had a perfect right of recovery back against plaintiff, if he did sue, the effect of the bargain was to discharge him. No question arose relative to the statute about releasing joint-debtors.

*Harrison* v. *Close* (2 Johns., 448) was a like case in this respect, in which it was held that under such circumstances there was no satisfaction of the entire debt. And so here the intent of the parties was that there should not be a satisfaction of the entire obligation on the bond, and that fact plainly appears from the face of the instrument. The intent was to satisfy but one-half that liability and to discharge Moffat from his share of the whole, leaving Hayward liable for his half. This seems to be the spirit of the decision in *Irvine* v. *Millbank* (56 N. Y., 635), in which the court, in speaking of a somewhat analogous discharge, after noting that it was *not* a technical release, say : "Nor was it tantamount to a release, which is, in effect, an assumption of payment, as its whole tenor is at enmity with such an admission." We are, therefore, brought back to the point that where, as in this case, there is a technical release of one surety, as distinguished from a covenant not to sue, is there necessarily a discharge of the entire obligation as to both parties when that was not the intention of the parties? Before expressing our view on this point, we may premise that the simple element of suretyship seems eliminated by *Benedict* v. *Rea*, so

that we may consider the case as if Moffat & Hayward were simply principal joint and several debtors. We think that the reasoning of, and cases cited by, the late Justice BRONSON in *Bronson* v. *Fitzhugh* (1 Hill, 185), fully justifies the position that an instrument in the form of a technical release may be construed to be a covenant not to sue where the court may see that that was the intent of the parties either on the face of the document or by one of equal dignity. Here that intent is plainly discoverable from the face of the first release, so-called, and the uncontradicted proof was that the second document, which is also under seal, was delivered with the first one. They are, therefore, to be read as constituting a single transaction. Thus construed, these terms, to borrow the expression from *Irvine* v. *Millbank,* are "at enmity" with the theory and purpose of an unqualified technical release, and the instrument must be construed according to the intent of the parties.

We are, therefore, of the opinion that the decision of the learned trial judge was correct in this respect.

2. We have incidentally covered the defendant's second point — that the acceptance of the sum from Moffat operated as an accord and satisfaction.

3. The defendant's third contention relates to the failure to issue an execution on the judgment on the surrogate's decree. Section 2607 of the Code relates to accountings and surrogates' decrees generally. Section 2608 relates especially to such a case as this, and states the rule which we apply. True, it seems to relate to cases in which a successor is called upon to act. But no new appointment is necessary in such a case as this, where one competent executor remains. (Sec. 2692.) The remaining executor is the successor in such a case, within the meaning of section 2608. We held substantially this rule in *Boyle* v. *St. John* (28 Hun, 454). The Code does not contemplate an execution in such a case.

4. Defendant's fourth point is, that the surrogate had no power, at the time the bond was executed, to direct the payment of the money to plaintiff, the executor, etc., and asks us to hold that no action will lie on the bond for that reason. This bond was executed April 28, 1864, and was conditioned "for the faithful performance" of Frederick's duties as an executor, and that he should obey all

orders of the surrogate touching the administration. The will was probated April 20, 1864, and the letters were not issued until the 30th day of April, 1864. This was before the present Code. The statute then authorized the requirement of just such a bond from a non-resident executor (2 R. S., 70, § 7) before letters could be issued to him. It was imperative. This bond was given to satisfy that requirement of the statute. It is not necessary to inquire into the power of surrogates under the old statute to make the orders or decrees for the payment of money, etc. The bond was not given with reference to the powers of the surrogate at that time. The principal was to "*faithfully execute the trust reposed in him;*" and, if he failed to do that, it matters not when or how the surrogate obtained power to make the decree that the executor was in default so long as he had the power when he made the decree. That all relates to the remedy and does not affect the obligation and the right to enforce it. No question is made respecting the general power to adjudge such default under the Code at the time when the decree was made which fixed the amount of Frederick Hood's default; this decree, in that respect, is of the same force and effect as if made by this court. It shows a default and fixes the amount payable in consequence thereof.

5. The plaintiff's participation in the investments which resulted in loss to the estate furnishes no answer to her effort, as executrix, to recover their moneys from the sureties. This action is really by the estate to get back the money lost by wrongs for which Frederick Hood was liable; and it matters not who participated therein, so long as the beneficiaries of plaintiff's trust did not do so. Perhaps, if she were insolvent, so that defendant would be without other remedy, he might set up her participation to the extent of her individual interest in the fund. But while there is an allegation there is no proof of her insolvency. The estate is here demanding indemnity for Frederick Hood's misdeeds. They have been adjudged and that judgment is at least *prima facie* evidence against the sureties; and that is all that is necessary to sustain the finding of fact in this respect.

6. The extent of the recovery. We may, under this head, deal with the contentions of both appellants. Defendant claims that he was not liable for interest at all. The court charged him one-half

the penalty of the bond ($10,000) with interest ($2,390) from December 7, 1883, the date when the surrogate found and adjudged that Frederick Hood had misused the trust fund, and revoked his letters. We think this was right. It then became his duty to pay over the sum for which he was liable, irrespective of the time when he misappropiated it, or when the surrogate fixed the amount of it by his final decree on the accounting. The money was then due and payable. (Code, § 2603.) He was then in default. The liability of his sureties was then greater than the penalty of their bond. Hayward was then bound to pay $10,000 as an ordinary debtor; because Frederick Hood had then failed to pay something over $30,000 which he ought then to have paid to the plaintiff. The $10,000 was then due from this defendant and interest began as against him. (*White* v. *Miller*, 78 N. Y., 393.) The cause of action then accrued. (*Haight* v. *Brisbin*, 100 N. Y., 219.) It follows from these views that plaintiff's contention respecting interest must be overruled.

7. It does not seem to be necessary, under section 2608, that leave should be granted to a "successor" or one standing in place of a successor as we have intimated, to obtain leave to sue on such a bond. Sections 2606, 2607 and 2608, when read together show the distinction.

8. We think that the allegations of the answer plead as a counter-claim were not such in law. The acts alleged were not between the same parties. Plaintiff's action, as it comes to us, is in her capacity as executrix. The liability on which this alleged counter-claim is based was personal or individual; and although she is a party in her own right as well as in her representative capacity, the action could not be maintained in the latter. This claim was rather in the nature of a set-off depending upon the equitable considerations which might have authorized some relief if the defendant had proved her insolvency, which he failed to do. The last remark is not intended to *decide* anything on this point. We simply hold that no counter-claim is shown by this answer which can be taken as true because plaintiff failed to reply.

9. The pending action set up by defendant is not in our judgment a bar to this action. The authorities cited by defendant for this position do not seem to us to sustain it.

10. Nor was the action, in our judgment, barred by any provision of the statute limiting the time for the commencement of actions. We have already indicated the time when this debt became due and payable.

11. We think that the report in *Matter of Hood* (104 N. Y., 103) answers the defendant's point, that the money which Frederick was adjudged to pay to plaintiff by the surrogate's decree was held by the executors as trustees. We look in vain for anything which discharges them as executors, or which shows that they ever opened a new account as trustees or turned over the funds from their hands as executors to them as trustees.

12. We have examined the other points raised by defendant and failed to find anything in them worthy of special attention.

It follows, from these views, that the judgment should be affirmed, but the order should be without costs.

BARNARD, P. J., concurred; DYKMAN, J., not sitting.

Judgment affirmed, without costs, order on plaintiff's appeal affirmed, without costs.