MARY AGNES POTTER, Plaintiff, *v.* THOMAS L. OGDEN and Others, as Executors of SAMUEL E. LYON, Deceased, Defendants.

*Executors and administrators — an administrator's bond executed before the Code of Civil Procedure — may be enforced under the Code — Code of Civil Procedure, secs.* 2610, 2606 *— effect of a decree against the administrator of an administrator.*

In 1872 John W Mills and Jane E. Kelemen were appointed administrators of the estate of Abigail Hall, deceased, and Samuel E. Lyon became a surety on their bond. Mills alone administered and accounted for the estate, and in 1877 was directed to pay to himself, as general guardian of Mary Agnes Potter, a sum of money representing her share in the estate, and to retain it as guardian.

It did not appear that Mills ever paid this money to himself as guardian. In 1882 he died and Charles A. Hall, a creditor of Mills, was appointed his administrator. In 1889 Mary Agnes Potter petitioned the Surrogate's Court asking that Charles A. Hall account as administrator. It then appeared that Mills had died insolvent and had never paid the petitioner anything. In November, 1890, a decree was entered adjudging that Hall, as administrator of Mills, pay to the petitioner the sum in question, with interest, out of the assets of the estate of Abigail Hall, deceased.

In an action subsequently brought by Mary Agnes Potter against the executors of the surety, Lyon, who had died, setting up Mills' failure to pay her said sum of money:

*Held,* that the estate of the surety was liable.

That although the bond was given in 1872, the manner of enforcing the liability created by it was governed by the Code of Civil Procedure, which repealed all prior acts relative to the procedure upon such a bond.

That the liability of the surety could not be increased by a subsequent statute, but that he had acquired no vested right as to the method of procedure by which his liability was to be determined.

That the last clause of section 2610 of said Code, stating that the provisions of article 5, chapter 18, shall apply to an administrator to whom letters have been issued before that chapter took effect, "except that it does not affect in any manner the liability of the sureties in a bond executed before this chapter takes effect," had no reference to the method of enforcing such a liability, but applied only to provisions contained in the chapter concerning an extension of the liability upon such official bonds.

That, under section 2606 of said Code, the direction in the decree requiring Hall, as administrator of Mills, to pay the sum in question out of the estate of Abigail Hall was proper in form.

That such a decree against Mills' administrator had the same effect as if an execution, issued upon a surrogate's decree against the property of Mills, had been returned unsatisfied during his lifetime.

EXCEPTIONS of the plaintiff Mary Agnes Potter, taken upon a trial had at the New York Circuit before the court and a jury, at which the complaint was dismissed and the exceptions of the plaintiff were ordered to be heard in the first instance at General Term, judgment in the meantime to be suspended.

*John D. Kernan,* for the motion.

*David B. Ogden,* opposed.

VAN BRUNT, P. J. :

This action was brought against the defendants as executors of the last will, etc., of Samuel E. Lyon, deceased, upon the bond of one John W. Mills, as administrator of, etc., of Abigail Hall, deceased, on which bond the said Samuel E. Lyon was one of the sureties.

It appeared that on the 10th of June, 1872, John W. Mills and Jane E. Kelemen were appointed by the surrogate of Westchester county administrators of the estate of Abigail Hall, deceased, and on the 22d of May, 1872, Lyon signed the bond in suit conditional for the faithful execution of the trust of said administrators and their obedience to all orders of the surrogate. On the 13th of October, 1873, Mills began accounting proceedings, which proceedings terminated in a decree on the 27th of May, 1877, directing Mills to pay and distribute to John W. Mills, as general guardian of Agnes Hall, $11,183.23 ; also that he retain in his hands, as such general guardian, the said amount adjudged to be due and payable to her. The defendants contend that thereafter Mills continued to retain and hold the same as such general guardian, and in no other capacity. There is no evidence that Mills, in fact, transferred or paid over the fund to himself as general guardian, and the plaintiff has never received anything. In October, 1882, Mills died, and in a proceeding brought by one Charles A. Hall, a creditor of said Mills, Hall was appointed his administrator. On the 25th of September, 1889, the plaintiff petitioned that said Hall, as such administrator, be called upon to account, in accordance with which petition a citation was issued to said Hall as administrator, and in accordance therewith he rendered an account in which he states that, as he is informed and believes, said Mills, as administrator of, etc., of Abigail Hall, deceased,

had in his hands on the 2d of May, 1877, the distributive share of said estate due to the petitioner; that such distributive share was never paid to the petitioner, but was due and unpaid to her; and that, as administrator of such estate of John W. Mills, he had not been able to find any assets or property of the estate of said Abigail Hall, deceased, remaining in the hands of said Mills as administrator of her estate at the time of his decease, except some articles of furniture not exceeding fifty dollars in value. A decree was entered upon said accounting in the Surrogate's Court on the 17th of November, 1890, adjudging that said Hall, as administrator of said John W. Mills, pay to the plaintiff the sum of $11,183.23, with interest thereon from the 2d of May, 1877, out of the assets of Abigail Hall, deceased.

Various other questions were raised during the progress of the trial which it is not necessary to mention here, and the court was moved to dismiss the complaint upon the ground that as the bond upon which the suit was brought was given in 1872, and that as the provisions of law then in force regulating the method of fixing the liability of sureties had not been observed prior to bringing this action, the complaint should be dismissed. This motion was granted and an exception taken.

It is urged, upon the part of the defendants, that the liability of the sureties on Mills' bond could be determined only in the manner provided by law in 1872, when the bond was executed. If this is a correct proposition of law, then it would seem that the sureties upon the bond were absolutely absolved, because the provisions of the Revised Statutes and of the laws of 1837 relating to this subject were repealed by the repealing act of 1880, and no longer exist.

It was undoubtedly supposed that the sections of the Code relating to this matter were applicable to bonds which had been given prior to their enactment, as well as to those which should come into existence subsequently. This view we think to be entirely well founded. In the execution of the bond the sureties had obtained no vested right in the method of procedure by which their liability was to be determined. There was no power in the legislature to increase that liability in any way, but they had a right to alter the remedies by which the liability upon the bond should be enforced, and the procedure which should be observed by those seeking relief because of a breach in the condition of the bond. And this was all that was

done by the repealing of the provisions of the Revised Statutes and the laws of 1837 at the time when the sections of the Code above referred to went into operation.    Upon an examination of those sections it is clear that this is a correct interpretation of the legislation. Section 2610 expressly provides that "the provisions of this article apply to an executor, administrator or guardian to whom letters *have been* issued, and to a testamentary trustee whose trust *has been* created before this chapter takes effect."    It is true that the section terminates with this clause, "except that it does not affect in any manner the liability of the sureties in a bond executed before this chapter takes effect."    But it is evident that this saving clause was intended to relate to the provisions contained in the chapter relating to the extension of the liabilities of sureties upon the official bonds of either a guardian, administrator or executor.    It had no reference to the methods by which the liabilities arising from the breach of the conditions of a bond should be enforced.    A change in the method of enforcing liability upon a bond in no way increases or diminishes such liability, and, therefore, has no effect upon the same.    It would have been idle, if the contention of the respondent is correct, for the legislature to have enacted section 2610 at all, as the last clause would repeal the first.    This view seems to have been recognized in the case of *Hood* v. *Hayward* (48 Hun, 330), which was affirmed by the Court of Appeals (124 N. Y., 1), the point in question, however, not being noticed in the latter court.

But it is urged that, even if it be held that the provisions of the Code are applicable to the case, there is no such determination of Mills' default as is there provided for, because the decree rendered directs the administrator of Mills to pay to the plaintiff the amount of her claim out of the assets of the estate of Abigail Hall, deceased, instead of out of the estate of John W. Mills, deceased.    We cannot see the force of this objection.    The decree was a determination that Mills, as administrator, had not paid the money as directed by the decree of May 2, 1877, and that when he died he owed it to the plaintiff as such administrator, and had not paid it over to her or to himself, as guardian, and that at the time of his death he still held and owned the money as administrator.

It is clear that the direction that Hall, as administrator of Mills, pay to the plaintiff, out of the assets of the estate of Abigail Hall,

is proper in form, because such is the procedure contemplated by section 2606 of the Code. The administrator or executor of the deceased administrator is to account precisely the same as the deceased would have accounted had his letters been revoked by the surrogate's decree; and it is expressly provided that a decree against a decedent's executor or administrator rendered upon such an accounting has the same effect as if an execution issued upon the surrogate's decree against the property of the decedent had been returned unsatisfied during the decedent's lifetime.

It further appears from this decree that Mills died without assets of any kind or in any capacity. Hence it would appear that there had been a complete *devastavit* by the deceased administrator. And this view is recognized in the case of *Perkins* v. *Stimmel* (114 N. Y., 359).

The claim that there might be assets of the estate of Mills out of which the plaintiff's claim might be satisfied, and that the decree in its present form would be ineffectual to reach them, cannot prevail; because the decree expressly finds that Mills died without assets of any kind.

It is further claimed that there was no default shown upon the part of Mills, as administrator, in complying with the decree of May 2, 1877. It appears that he was directed to pay to himself as guardian, but there is not the slightest evidence that any such payment was ever made. The suggestion that the decree shows that at this time Mills had the funds in his hands to make this payment is certainly not well founded. All that the decree determines is, that he was chargeable with this amount; but that he had the funds actually in his hands was not adjudicated. The decree determines what the administrator is chargeable with and what he should pay, and directs him to pay it, and if he does not pay it, then the beneficiary has his remedies; and the wording of a surrogate's decree upon an accounting cannot be tortured into a judicial determination that an administrator or executor has in his hands all the assets for which he is chargeable.

Without considering the other points raised, we are of opinion that there was a sufficient compliance with the provisions of the Code fixing the liability of the sureties upon the bond of the administrator, and that the only remedy which remained, and the only method of procedure, was that which was contained in the Code.

We think, therefore, that the objections should be sustained and a new trial ordered, with costs to the plaintiff to abide the event.

PATTERSON and O'BRIEN, JJ., concurred.

Objections sustained and a new trial ordered, with costs to the plaintiff to abide the event.