(72 Hun, 160.)

### In re SANDISON'S ESTATE.

### In re BROWN.

(Supreme Court, General Term, First Department. October 13, 1893.)

1. GUARDIAN—TRANSFER OF FUNDS HELD AS EXECUTOR—NEW BOND.
    Where a general guardian, after he qualifies, becomes executor of an estate of which his ward is legatee, he can transfer from himself as executor to himself as guardian the money due his ward from such estate, without first giving a new bond, under Code Civil Proc. § 2746, which provides that the court may, in its discretion, by its decree, direct any legacy which is payable to an infant to be paid to its general guardian, on his giving bond running to such infant in double the amount of the legacy, conditioned to faithfully apply and account for such legacy; and the sureties on his general guardian's bond are liable for his failure to account for the money so transferred to himself.

2. SAME—VOUCHERS—SURETIES—ESTOPPEL.
    Where such executor, in the final settlement of his account, files receipts from himself as guardian for the sum due his ward, and thereon procures his discharge, the sureties on his guardian's bond cannot be heard to deny liability to the ward for the money thus receipted for, in the absence of collusion between him and the ward for the purpose of creating a situation where the guardian would be relieved at the expense of the sureties.

Appeal from surrogate's court, New York county.

Petition by George McGrath and Charles N. Johnston, sureties on the bond of James Brown as former general guardian of Elizabeth Sandison, an infant, to open a decree settling the account of such guardian. From an order denying the petition, petitioners appeal. Affirmed.

Argued before O'BRIEN, FOLLETT, and PARKER, JJ.

Black & King, for appellants.

John C. Clark, for respondents.

PARKER, J. The appellants, sureties on a general guardian's bond, petitioned the surrogate that the decree settling the guardian's accounts be opened, to the end that the sureties might be permitted to show that there was not anything due to the ward from the general guardian. James Brown was the general guardian of the infant, and also the executor under the will of her grandmother, in which capacity he received certain moneys bequeathed to the infant. The sureties insist that the general guardian was in the decree settling his accounts wrongfully charged with moneys he held as executor. The moneys belonged to the infant in either event, but it is urged that Brown, as executor, and not as general guardian, should be decreed to pay them. The surrogate denied the application. An appeal having been taken to this court, his determination must be reviewed as if an original application had been made to this term. Code Civil Proc. § 2481, subd. 6. Briefly,

the history of the parties, so far as material in this proceeding, are as follows: James Brown was appointed general guardian of Elizabeth Sandison, June 8, 1880, appellants being his sureties. On the same day letters of administration on the estate of Elizabeth Sandison, deceased, mother of the infant, were issued to him, appellants again becoming his sureties. Six months later, Sarah Armstrong, grandmother of the infant, died, leaving a will, in which she named the infant as residuary legatee, and appointed Brown executor. Being compelled to a final judicial settlement as executor, he filed a verified account on June 3, 1890, in which he credited himself as executor with having paid to himself as general guardian of the infant, Elizabeth Sandison, the residuary legatee of Sarah Armstrong, the following sums: 1882, April 18th, $2,000; 1885, January 15th, $1,100; 1885, March 26th, $500; 1887, February 20th, $300. In support of his account he filed vouchers, and a decree was thereupon entered, settling his accounts, and discharging him as executor. Nearly 18 months later,—on February 4, 1892,—Brown was removed from his office as general guardian, and thereafter required to render an account. In the account he charged himself as guardian with having received from himself as executor the sums with which he credited himself in his accounts as executor. In the decree, which bears date January 5, 1893, he was ordered to pay over to the present general guardian of the infant the sum of $2,512.86. Having failed to make the payment, an action was brought against the sureties to recover such amount; hence this proceeding, which has for its apparent object the shifting of the burden imposed by the decree from the general guardian, who has sureties, to the executor, who has none.

As the executor is insolvent, the ultimate result of the contest must be that either the sureties or the ward must lose the sum which the executor guardian has misappropriated. The sureties contend that the only way in which he could have transferred the moneys from himself as executor to himself as general guardian would have been in pursuance of a decree of the surrogate's court, requiring that the general guardian first give a new bond, conditioned to faithfully apply such legacy or distributive share. Code Civil Proc. § 2746.[1] Cases are cited where the surrogate's court has required this to be done, and it is now argued that in default of such a bond a payment to a guardian, although pursuant

---

[1] Code Civil Proc. § 2746, provides as follows: "When a legacy or distributive share is payable to an infant, the decree may, in the discretion of the surrogate's court, direct it, or so much of it as may be necessary, to be paid to his general guardian, to be applied to his support and education. * * * Said court may, in its discretion, by its decree, direct any legacy or distributive share, * * * not paid or applied as aforesaid, which is payable to an infant, to be paid to the general guardian of such infant, upon his executing and depositing with the surrogate in his office, a bond running to such infant, with two or more sufficient sureties, duly acknowledged and approved by the surrogate, in double the amount of such legacy or distributive share, conditioned that such general guardian shall faithfully apply such legacy or distributive share, and render a true and just account of the application thereof," etc.

to a decree, would be illegal. We do not understand such to be the effect of the statute, or that the decisions quoted attempt to give it such a construction. The statute requires the surrogate to exact such a bond from the guardian, to more certainly assure the property of the infant's estate, because it frequently happens that a bequest to an infant succeeds the granting of letters of guardianship, and therefore is not considered in determining the value of the infant's estate as a basis for the bond. And this provision of law is generally enforced, but an omission to do so could not avail a guardian receiving the moneys. He could not say: "I cannot be compelled to account for these moneys, because the surrogate's court omitted to decree that I should give a special bond, as provided by statute." He would not be permitted to dispute that moneys paid to him under such circumstances were the moneys of the ward; and the statute, as well as his bond, obligates him "to render a true and just account of all moneys and property received by him, and of the application thereof." So, if he did receive these moneys as general guardian, he must account for them, and for that which he is chargeable with on an accounting, his sureties are responsible. On the accounting as executor he credited himself with having paid to himself as general guardian the sum of $3,900; but, urge the appellants, "We are not bound by his acts as executor, and it was in that capacity he presented his accounts for settlement." True, but in support of that account he filed receipts for the several amounts from himself as general guardian. On the strength of those receipts he was discharged from all liability as executor. Thereafter the general guardian could not be heard to deny the right of the ward to a decree charging him with such amount, nor would the sureties be in any better position than their principal. An exception to this general rule would be presented if a guardian and ward should conspire together for the purpose of creating a situation where the guardian would be relieved at the expense of his sureties. But that is not this case. There is no evidence here that would justify a finding that the ward, or the special guardian representing her on the final settlements, did not fully believe the accounts presented by the executor and guardian to be true. The order should be affirmed, with $10 costs and printing disbursements. All concur.