SEYMOUR LOWMAN, as Administrator, etc., of CHARLES G. JUDD, Deceased, Respondent, *v.* THE ELMIRA, CORTLAND AND NORTHERN RAILROAD COMPANY, Appellant.

*Letters of administration conclusive — compromise of a judgment by an attorney — limitation of an administrator's powers — presumption as to the capacity in which money is held — distribution of a decedent's estate.*

Where a Surrogate's Court has jurisdiction to grant letters of administration on the estate of a decedent, its determination in removing one administrator and appointing another and as to the sufficiency of the administrator's bond, is conclusive in an action brought by such administrator in the Supreme Court to recover damages resulting from the death of his intestate.

The attorney for the plaintiff in whose favor judgment has been recovered in an action has no authority to compromise the judgment. If he has a right to receive any part of the judgment, what he in fact does receive may be applicable thereon, but such partial payment does not justify his giving a satisfaction piece thereof.

Presumptively the defendant in an action is chargeable with notice of the limitations contained in the letters of administration granted the plaintiff under the provisions of section 2667 of the Code of Civil Procedure as it was in 1886 (now section 2664), and the defendant has no right to pay the judgment recovered in such an action against it either to the administrator or to his attorney.

Ordinarily when a person acts in a dual capacity, and in one capacity receives money which should be transferred to and held by him in the other capacity, the law presumes that he has done his duty and that he holds the money in the capacity in which he should hold it.

Under the provisions of section 2746 of the Code of Civil Procedure an administrator of a decedent who has collected a judgment, recovered by him for the damages sustained by reason of the death of his intestate, has no right to pay the same or a portion thereof to the general guardian of the decedent's sole heir at law and next of kin unless so directed by the proper Surrogate's Court. The amount collected must be paid in conformity with the general provisions of the Code of Civil Procedure regulating the manner of payment of a distributive share of an estate belonging to an infant.

APPEAL by the defendant, The Elmira, Cortland and Northern Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Chemung on the 2d day of October, 1894, upon the decision of the court rendered after a trial at the Chemung Special Term vacating and setting aside a certain satisfaction of judgment recovered in favor of Hurd B. Judd, as administrator, etc., of Charles G. Judd, deceased, against the Elmira, Cortland and Northern Railroad Company, and executed by Jacob Schwartz, the plaintiff's attorney in said action.

This action was brought to set aside and vacate the satisfaction of a judgment recovered in the Supreme Court and entered on the 29th of October, 1886, for the sum of $4,349.31 in favor of Hurd B. Judd, as administrator, etc., of Charles G. Judd, deceased, against this defendant, The Elmira, Cortland and Northern Railroad Company. By the judgment appealed from it is adjudged that the satisfaction piece of said judgment, which was executed by Jacob Schwartz, plaintiff's attorney therein, on the 26th of July, 1887, and filed in the Chemung county clerk's office the same day,

" be and the same is vacated and set aside, and that the said judgment against the defendant and the lien thereof be and the same hereby is restored."

*Frederick Collin,* for the appellant.

*Baldwin & Baldwin,* for the respondent.

MERWIN, J. :

On the 24th of October, 1885, Charles G. Judd, then being in the employ of the defendant as a brakeman, was killed while in the performance of his duties and died intestate, leaving him surviving as his only heir and next of kin a daughter, Emily B. Judd, an infant, and leaving no widow. On the 10th of November, 1885, Hurd B. Judd, of Pittston, in the State of Pennsylvania, was appointed general guardian of the said infant by the Surrogate's Court of the county of Chemung. This appointment was based on the petition of Hurd B. Judd, which stated, among other things, that he resided at Pittston and was the uncle of the minor; that the minor was eight years old and resided in the city of Elmira and had no property, real or personal, with the exception of seventeen dollars due to her deceased father. On the 3d day of March, 1886, Hurd B. Judd, as general guardian of the minor, applied to the Surrogate's Court of Chemung county for letters of administration upon the estate of Charles G. Judd. His verified petition stated, among other things, that Charles G. Judd, at the time of his death, resided in the city of Elmira, in said county; that he died intestate and the value of his personal property did not exceed fifty dollars; that he came to his death by reason of injuries through the negligence of this defendant, and that the petitioner desired to commence an action, as administrator, to enforce the liability given by the statute; that the petitioner had no property in this State and no means of procuring bondsmen or giving a bond for the amount of the probable recovery. Thereupon the Surrogate's Court, upon the petitioner filing a bond in the sum of $300, issued letters to Hurd B. Judd. These letters, after reciting the death and residence of Charles G. Judd, and that a right of action is reserved and granted by special provision of law, and that Hurd B. Judd ·is entitled to

the administration of said estate and has filed the proper oath, proceeds as follows : " We do by these presents depute, constitute and appoint you, the said Hurd B. Judd, administrator of all and singular the goods, chattels and credits which were of the said Charles G. Judd, deceased. These letters, however, are limited to the prosecution of an action by said administrator to recover damages by special provision of law by reason of the death of said Charles G. Judd, deceased ; and you, the said Hurd B. Judd, as such administrator, are hereby restrained from a compromise of any such action and the enforcement of any judgment recovered in any such action until the further order of the surrogate of the said county of Chemung.

" Granting by these presents unto said administrator full power to administer upon the estate of said deceased, and to do and perform all duties and acts relating thereto, which, by the laws of this State are required of administrators appointed by the surrogate, and the performance of which, in the administration of said estate, may be necessary for the due, faithful and proper administration thereof. Subject, however, to the conditions, limitations and restrictions hereinbefore mentioned."

Thereafter, an action was brought in the Supreme Court against the defendant in the name of Hurd B. Judd, as such administrator, upon the cause of action referred to in the petition and letters, and Jacob Schwartz was the plaintiff's attorney therein. It was brought to trial in October, 1886, and a verdict rendered in favor of the plaintiff therein for $4,000 ; and, upon this, judgment was duly entered on the 29th of October, 1886, for $4,349.31, damages and costs. On the 26th of July, 1887, the defendant paid to said Schwartz the sum of $4,750 in settlement of the judgment, and also of another claim upon which a suit was pending in the Supreme Court in favor of one Rogers against the same company to recover $3,000 or $4,000, in which suit the said Schwartz was the attorney for the plaintiff Rogers. These two claims were settled in a lump amount and no division made at the time, so that how much was for one or the other does not appear. At the time of this settlement the Rogers action was discontinued and the satisfaction piece in controversy executed by Schwartz as plaintiff's attorney and delivered to the defendant.

On the 5th of September, 1892, upon the petition of the minor, who had then arrived at the age of fourteen years, the plaintiff, Seymour Lowman, was duly appointed her general guardian, and immediately instituted proceedings in the Surrogate's Court of Chemung county for the removal of Hurd B. Judd as administrator; and thereupon, after a hearing, and on the 24th of October, 1892, an order was made removing Judd from the office of administrator, and revoking the letters issued to him, and directing that letters be issued to the plaintiff, Seymour Lowman, upon his giving the proper bond and qualifying. In pursuance of this order letters were issued to plaintiff on November 1, 1892. It is not found how much of the moneys paid to the attorney reached the hands of the administrator Judd. It is, however, found that he as administrator or as guardian has never accounted for any of such moneys, nor has the plaintiff ever received any part of the same.

It was decided by the Special Term that the compromise and settlement of the judgment made by the attorney was made without right or authority, and that the plaintiff in that action had no right or authority to satisfy the judgment or to receive pay therefor, and that the plaintiff in this action was entitled to a judgment vacating and setting aside the satisfaction piece and restoring the judgment and the lien thereof.

The defendant claims that the appointment of the plaintiff as administrator is invalid because no petition was filed as provided by section 2664 of the Code, and because the bond which he gave was not twice the value of the personal property, including the recovery against the defendant.

All the facts authorizing and calling for the appointment of Lowman as administrator appeared in the proceedings in the Surrogate's Court for the removal of Judd, and were before the court when it appointed the plaintiff. The bond was in the penalty of $4,000, and the proceedings showed that the recovery against the defendant was for $4,000, besides costs. The defendant cannot raise here the question that the plaintiff's bond was insufficient. (*Sullivan* v. *Tioga R. R. Co.*, 44 Hun, 304, and cases cited.) The Surrogate's Court had jurisdiction to grant the letters, and they are here conclusive. (Code, § 2591; *Kelly* v. *West*, 80 N. Y. 145.) We must, I think, assume that the letters to plaintiff are valid.

Assuming that the letters to Judd were without limitation, the attorney for the plaintiff in the judgment had no authority to compromise the judgment. (*Cox* v. *N. Y. C. & H. R. R. R. Co.*, 63 N. Y. 419; *Lewis* v. *Woodruff*, 15 How. Pr. 539.)  To avoid this situation, it is claimed by the defendant that the judgment must be deemed to have been paid in full.  That fact, however, is not found, nor is there any request to find it.  The attorney for the defendant who negotiated the settlement testified that the full amount of the judgment was paid, but he also testified that the two claims were settled in a lump amount, and that how much Schwartz received on the Judd judgment and how much on the other claim he did not know, and that he did not know how Schwartz divided it in his own mind, and that as between them there was no division made.  Evidently the statement of the witness, that the full amount of the judgment was paid, was only the operation of the mind of the witness, and not a part of the agreement of settlement.  If on this subject we were to assume anything, it would be in support of the decision appealed from, that there was in fact a compromise of the judgment.  We could not assume to the contrary for the purpose of reversal. (*E. C. Foundry Co.* v. *Hersee*, 103 N. Y. 25.)  This question, however, I do not consider very important.  For if the attorney had a right to receive any of the judgment, what he in fact did receive might be applicable on it, though he had no right to satisfy the judgment.

The important questions, therefore, are whether the defendant was protected in paying the judgment to the plaintiff therein, or his attorney, and, if not, whether the defendant can be afforded any protection by reason of the fact that Judd was at the time general guardian of the infant.

By the Code of Civil Procedure, section 2667, as it was in 1886, now section 2664, it is provided as follows : " But where a right of action is granted to an executor or administrator by special provision of law if it appears to be impracticable to give a bond sufficient to cover the probable amount to be recovered, the surrogate may, in his discretion, accept modified security, and issue letters limited to the prosecution of such action, but restraining the executor or administrator from a compromise of the action, and the enforce-

ment of any judgment recovered therein until the further order of
the surrogate, or additional further satisfactory security." Under
this provision the letters in question were issued, and the limitations
appeared upon their face, and also appeared in the records of the
Surrogate's Court. Very clearly it was the purpose of the law to
confer upon such an administrator only the right and power to prose-
cute the action for the purpose of obtaining a judgment if he could,
and so determine the right and liquidate the amount. He had no
right to compromise the action or collect the judgment. In the
answer of the defendant in the action the issuing of letters was
denied. Presumptively they were proved upon the trial, and the
defendant would have knowledge of the limitation on their face.
It is not found or proved in the present case that the defendant did
not know of the limitations or that it paid the money in good faith,
although the attorney of the defendant who negotiated the settle-
ment was a witness in the case. It should, I think, be held that,
presumptively at least, the defendant was chargeable with notice of
the limitations in the letters, and that, therefore, it had no right to
make the payment. The attorney for the administrator had no
greater rights or power to receive the money than the client had.

The defendant further claims that the money, having been received
by Judd as administrator, passed by operation of law to him as
general guardian, and is now held by him as such. The principle
is invoked that when a person acts in a dual capacity, and in one
capacity receives money which should be transferred to and held by
him in the other capacity, the law will presume that he has done his
duty and holds the money in the capacity in which he should hold
it. Many cases are cited to sustain the general proposition, and in
most of them the question arose in determining controversies between
sureties for the party in his different capacities. None of the cases
referred to are in this State except *In the Matter of Brown* (72
Hun, 160). In that case one Brown was the general guardian of
an infant, who was a residuary legatee in a will of which Brown
was executor. On his accounting as executor he credited himself
as executor with certain funds as paid to himself as guardian and
filed receipts for the same from himself as guardian, and on the
strength of these he was discharged from liability as executor. In
fact the payments had never been made. Upon an accounting by

Brown as guardian he charged himself with the same payments that he had been credited with as executor. The sureties on the bond of the guardian claimed that this should not be done, because upon the settlement of the executor the Surrogate's Court omitted to decree that the guardian should give a special bond as required by section 2746 of the Code, and that in default of this the payment to the guardian, though in pursuance of a decree, was illegal. It was held that the guardian could not be heard to deny the right of the ward to a decree charging him with the amount, and that the sureties were not in any better position than their principal. This ruling does not help us in the present case.

The principle invoked by the defendant does not apply to this case. Assuming that Judd, as administrator, had the fund in his hands he had no right, as against the infant heir and next of kin, to transfer it to himself as guardian. By section 1903 of the Code it is provided that the damages in such case when collected " must be distributed by the plaintiff as if they were unbequeathed assets left in his hands after payment of all debts and expenses of administration," but the plaintiff therein may deduct the expenses of the action and his commissions upon their allowance by the surrogate. The manner in which unbequeathed assets after the payment of debts and expenses shall be distributed is provided for by other sections of the Code (§ 2732 *et seq.*). By section 2746 it is provided that when a distributive share is payable to an infant the Surrogate's Court may, among other things, direct it to be paid to the general guardian upon his depositing with the surrogate in his office a bond of the form and character there specified, but that if no direction is made by the Surrogate's Court as to its payment in some of the ways there described, it shall, by order of that court, be paid into said court by payment to the county treasurer to be managed by him as therein directed. Under the provisions of this section an administrator has no right to pay a distributive share to a general guardian unless directed by the Surrogate's Court. It was so held under a similar provision of the Revised Statutes. (*Willcox* v. *Smith*, 26 Barb. 318, 336. See, also, *Estate of Flagg*, 10 N. Y. St. Repr. 694; Redf. Surr. Pr. [5th ed.] 686.) The fact that the distributive share in this case arose from the proceeds of a special action furnishes no good reason for removing it from the operation

of the general provision as to the manner of payment of a distributive share belonging to an infant.

It is suggested on the part of the defendant that a payment by the defendant to the general guardian would have been good, and that the payment here should be deemed to have been made to the guardian. The damages in such a case are recoverable only by an executor or administrator, and the defendant would have no greater right to pay or distribute them than the administrator would; so that if the administrator, though an unlimited one, had no right to pay the guardian without the order of the Surrogate's Court, the defendant would have no better right. No question was made on the trial or is here about the costs that were included in the judgment. We must, therefore, assume that any equities the defendant may have in regard to them as to the plaintiff in the judgment or the attorney have been fully protected or will be in any future proceeding on the judgment as restored.

It follows that the judgment should be affirmed.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment affirmed, with costs.