## ROBERT HENDERSON, Appellant, *v.* CHAS. S. COOVER *et als.*, Respondents.

Action Against Guardian for Proceeds of Real Estate Sold. A ward, on obtaining his majority, brought suit against his guardian and the sureties on his general bond, to recover moneys received by the guardian on the sale of the ward's real estate, and not accounted for: *Held*, that the suit could not be maintained on the general bond, for the reason that the sale of real estate was not one of the general duties of a guardian, and that therefore a nonsuit was properly granted.

General and Special Duties and Bonds of Guardians. The general duties of a guardian do not include the sale of the ward's real estate; and he has no right to sell such real estate except upon special license from the Probate Court; and no valid sale can take place until a special bond for the faithful application of the proceeds is given; and for such faithful application the sureties on the special bond only, and not those on the general bond, are bound.

Liability of Sureties on General Bond of Guardian. Though the general bond of a guardian is conditioned for the payment and delivery by him of "all the estate, moneys, and effects remaining in his hands or due from him on final settlement," it does not make the sureties responsible for the misapplication of moneys arising from the sale of real estate, for the reason that the sale and application of the proceeds of real estate are not general duties of a guardian.

Appeal from the District Court of the First Judicial District, Storey County.

The facts are stated in the opinion.

*J. S. Pitzer* and *W. F. Anderson*, for Appellant.

### I.

There was no issue to support the motion for nonsuit. The complaint alleges that the moneys were "received (by Coover) *on the sale of the estate, etc.,*" not that he made sale of estate. The facts as disclosed by the orders of Court, deed, bond, resignation of James Henderson, etc., were that the sale had been conducted by James Henderson as guardian; had been authorized; had been confirmed; that as a prerequisite to execution of deed of conveyance James Henderson was required to give bond in $12,000; and that this he was unable to give, and resigned the trust,

recommending C. S. Coover, who was then nominated by Robert Henderson, the ward. Coover then at once stepped into the place of James Henderson, and gave the bond in $12,000, here sued upon, and received the money $5,700. This bond is for the faithful execution of his trust as such guardian according to law.

This action is for money " received " by him, and the statement and proof of the source from which it came or was derived is immaterial. Had it been moneys in hand, coming as a legacy or gift from some one, it would have made no difference in the liability of the sureties ; in fact that in order to get the money he put his hand to a conveyance of lands, the sale of which had been ordered long prior, and made by James Henderson, former guardian, and confirmed by the Court, cannot be permitted to affect the liability of the sureties. It was good as a general bond, irrespective of the sale and conveyance, as it held them the sureties of the "*faithful execution of the trust,*" and this action was to recover moneys received by him, in the course of his said trust. (*Taylor* v. *Taylor*, 6 B. Monroe, 559; 1 Metcalf R. 507; *Cook* v. *Boyd*, 16 B. Monroe, 75; *Cavney* v. *Walden*, 16 B. Monroe, 396.)

If this be a good statutory bond it is a good common law bond. (*Cooper et als.,* v. *Haller*, 1 J. J. Marshall, 359 ; *Hamilton* v. *Caw*, 3 Monroe, 213 ; *Salter* v. *Richardson*, 3 Moor. 204 ; *Thompson* v. *Buchanan*, 2 J. J. Marshall, 418 ; *Carroll* v. *Cornet*, 2 J. J. Marshall, 199 ; *Bauford* v. *Dalson*, 7 Humph. 310 ; *Leggett* v. *Hunter*, 19 N. Y. 445 ; *People* v. *Norton*, 9 N. Y.)

## II.

Hitherto we have regarded the liability of the sureties as disconnected with the sale of the estate. That they were bound to the extent of the penalty of the bond, for any breach or failure in the performance of the duties of the trust, we hold to be true. Surely this motion for a nonsuit should not have been granted upon the issues made by their answer, for had they made an issue upon the allegations of the complaint, for receiving money upon such sale, and apprised us of the defense that they were under said bond not liable for money had for the sale and conveyance of lands, it may be that plaintiff could have shown that the sureties

were fully apprised that the very object of giving the bond was to enable Coover to receive the $5,700; in fact, that they saw the money at the time they signed the bond, and knew that it was expressly to enable Coover to receive it that they became his sureties.

To authorize a nonsuit, it must appear, admitting the testimony to be true, and every inference which is fairly deducible from it, that the plaintiff has still failed to support his claim under the pleadings. (*Munsell* v. *Bartlett*, 6 J. J. Marshall, 22). It was contended that the sale made by one guardian, the completion of which by conveyance was devolved upon another, (Coover) was not a valid sale, because no bond was given such as was required by the statute, *i.e.*, a special bond, to be answerable for moneys had by the trustee on making said sale. It was contended that such sale not having been valid, that it was the right of the ward on coming of age to follow the land into the " Savage Mining Company's," (the purchaser's) possession, and recover it; but this, to say the least, would have worked a great wrong to a company by whose labor the property has become of more than twenty times the value it was when sold.

### III.

The State provides a Court and its judicial officers as the only mode by which an infant's property can be conveyed. Under the order of its Court this property was sold, a bond taken to secure the infant, now before the Court, the fruits of that sale. This Court will stretch out its strong equitable arm to protect those rights, which the State forbade him to manage and dispose of during his minority; and will not permit a surety to escape a liability through the loose, frivolous, and subtle evasions presented here in the pleadings and motion for nonsuit. ·

*Aldrich and De Long,* for Respondents.

### I.

The sureties upon a general guardian's bond are not liable for the disposition of money arising from the sale of real estate, nor can they be held to account therefor.

The Act prescribing the duties of guardians (Statutes of 1861, 26, Sec. 37) shows clearly that it was not the intention of the law-makers to hold the sureties on the general bond liable ; else why the additional bond ?   The sureties on the general bond execute it with reference to the law as it exists—knowing that their liability is not extended to the application of the proceeds of real estate, and if by neglect or oversight on the part of the Court, the special bond is not required, this neglect may result in misfortune to the minor ; but upon no principle of justice can the sureties upon the general bond be called upon to account to the minor.   (*Lyman* v. *Conkey*, 1 Metcalf, 320 ; *Commonwealth* v. *Gilson*, 8 Watts, 214 ; *Beale's Ex'rs.* v. *Commonwealth*, 17 Serg. & R. 392.)

## II.

This is a common law suit upon the bond, alleging breaches of its conditions ; and there is no settlement shown before the Probate Court, no balance found to be due, and no decree of that Court upon which to found such a suit.   The mere fact that the prayer of the complaint calls for an accounting, is of no importance ; its averments are really nothing more nor less than those of an ordinary common law complaint, seeking a judgment against the principal and sureties, and containing nothing to warrant the interference of a Court of equity.   There must first be an accounting to the Probate Court, or surely under the direction of a Court of equity, before a suit at law can be maintained on the bond.   (*Stillwell and Wife* v. *Mills*, 19 Johnson, 304 ; *Salisbury et als.* v. *Van Housen*, 3 Hill, 77.)

By the Court, LEWIS, C. J.

Coover having been appointed guardian of the plaintiff, gave the general bond as required by the statute, with the defendants Grove Adams and Louis Feusier as sureties. . Some time before his appointment, certain real estate belonging to the ward had been sold, in accordance with an order of the Probate Court, by one James Henderson, who was then the guardian of the plaintiff ; but before the conveyance was made or the purchase money paid, Henderson resigned his guardianship, and the defendant Coover was

appointed to succeed him.   The purchase money for the property so sold, which amounted to fifty-seven hundred dollars, was paid to Coover, and the deed of conveyance executed by him.   The complaint charges that only five hundred dollars of the money thus received has been paid to the plaintiff; that after attaining his majority he demanded an accounting from his guardian, but that no account has been rendered; and, it is alleged, that the sum of fifty-two hundred dollars, the balance of the money received from the sale of the real estate, is now held by the defendant Coover.

This action is brought upon the guardian's general bond, and judgment asked against the principal and sureties for the sum of fifty-two hundred dollars, with costs of suit.   After proving the material allegations of his complaint, the plaintiff was nonsuited by the Court below, and judgment for costs rendered against him, from which the appeal is taken.

In our judgment the nonsuit was properly granted.   The action, as we have before mentioned, is upon the general bond of the guardian, and the only material facts proven were the receipt of the purchase money upon the sale of the real estate, and the refusal by Coover to account for it.   But the sureties on the general bond of a guardian are not under our law responsible for the failure by the guardian to account for money received from the sale of real estate, or its misapplication by him.

To sell the real estate of wards for their benefit is not included in the general duties of guardians, nor have they the right or authority to do so except upon obtaining a license from the proper Court authorizing it; and Sec. 32, p. 260, Laws of 1861, declares that every guardian " authorized to sell real estate * * * shall before the sale give bond to the Probate Judge, with sufficient security, to be approved by such Probate Judge, with condition to sell the same in the manner prescribed by law for sales of real estate by executors and administrators, and to account for and dispose of the proceeds of the sale in the manner provided by law."   In no case whatever can the real estate be sold until this bond is given. When given, the sureties upon it are very clearly responsible for any misapplication of the money acquired by the sale of such

property, and for the refusal by the guardian to account for it, because to account for such money is the principal condition of the bond, and the statute does not in direct terms require a condition in the general bond to account for the proceeds of such sales. It is true one of the conditions of the general bond is that the guardian shall " pay over and deliver all the estate, moneys, and effects remaining in his hands or due from him on his final settlement;" but as that bond seems to be given only to secure the faithful performance of the guardian's general duties, and a special bond is required to be given to secure an accounting for and proper disposition of the money arising from the sale of real estate, it can hardly be supposed that it was intended to make the sureties on the general bond responsible for a misapplication of the money arising from the sale of real estate.   With respect to statutory provisions very similar to ours, the Supreme Court of Maine, in the case of *Williams* v. *Morton*, used this language : " It could not have been designed by the Legislature that a bond given for the faithful discharge of the duties of guardian, which, by his letters of guardianship he is bound to perform, should be the security for the observance of the provisions of a sale of real estate and the proper application of the proceeds, when the sale was under authority of a special license only, and a special bond is required, that the duties to be done under that license as the law prescribes, shall be faithfully performed.   The proceedings under the license, as required by the statute, are not strictly speaking guardian duties, but as matter of convenience the change of the real estate of the ward into money is to be done by him who has the charge of the former, and who is to see that the latter is properly secured upon interest."   (38 Maine, 52.)   Such also appears to have been the view taken of like statutory regulations by the Supreme Court of Massachusetts.  (*Lyman et als.* v. *Conkey*, 1 Met. 317.) The statute in that State has since been amended, so that at present it is made one of the express conditions of the general bond, that the guardian will render an account on oath of the property in his hands, *including the proceeds of all real estate sold by him.*" (Revised Statutes of Mass. 545.)   Since the adoption of this amendment the Courts have very materially limited the liabilities

of the sureties upon the special bond. (See *Fay* v. *Taylor et als.*, 11 Metcalf, 229, and 11 Cushing, 18.)

But the general bond required by the statute of this State is substantially like that required by the Massachusetts law prior to the amendment, hence the case of *Lyman et als.* v. *Conkey* appears to sustain our views.

As it was shown by the plaintiff's proof that the money for which Coover has not accounted was the price of real estate sold, and that the defendants Adams and Feusier were sureties on the general bond only, the plaintiff was properly nonsuited.

JOHNSON, J., did not participate in the foregoing decision.