There was a question, upon this testimony, whether the plaintiff, at the time the dumb-waiter fell, had just been advised by the tenant that it was high enough, and it struck him before he had time to withdraw from the shaft, or whether he hesitated a little after he had been advised that it fell, and cast his eyes down below, and was hurt while he was so doing. Either view might have been taken by the jury; and upon this appeal we are bound to assume that they would have taken that view of it which was most favorable to the plaintiff upon the evidence, and that is that he had just finished placing the dumb-waiter at the floor where it was intended to go, and that it fell while he was still practically in the act of doing so. That being so, we agree with the learned trial judge that the question of contributory negligence was for the jury. But as we disagree with him upon the question of negligence, and think that, contrary to his ruling, there was a question for the jury as to the negligence of the defendant, we feel bound to reverse this judgment.

It appears from the case that the plaintiff, after the trial, entered an order denying his motion for leave to go to the jury; and an appeal is also taken from that order. The entry of such an order as that was not necessary. A motion for leave to go to the jury in a case is one of the proceedings in the trial. The correctness of a ruling upon it is sufficiently raised by an exception, and what was done in that regard must always be made to appear by the case and exceptions. Here it does not appear, by the case and exceptions, that any leave was asked by the plaintiff to go to the jury, or that any ruling was made by the court upon that subject. If the plaintiff's right to review this judgment depended upon the denial of his application for leave to go to the jury,—which was not made during the trial of the case, but was made afterwards, if at all, and was not excepted to, but was appealed from,—he would have no standing in this court. The question for review here is presented by the exception to the granting of a motion for a nonsuit, and not otherwise. The appeal from the order denying the motion for leave to go to the jury must therefore be dismissed.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

---

(18 App. Div. 495.)

### JOHNSON v. CHAMBERLAIN et al.

(Supreme Court, Appellate Division, Fourth Department.   June 12, 1897.)

1. INSANE PERSONS—COMMITTEE—OBLIGATION OF SURETIES.
   The full measure of the obligation of the sureties on the bond of the committee of a lunatic is to answer for a failure on the part of the principal to account for moneys which come legally into his hands, and they are not responsible for his failure to account for moneys which have come to his possession by a proceeding clearly unlawful and ultra vires, under a claim that the same belonged to the lunatic.

2. SAME—MONEYS UNLAWFULLY IN POSSESSION.
   When the committee of a lunatic assumes to sell his ward's real estate, without taking any of the proceedings required for that purpose, and re-

ceives the price thereof, such price does not come lawfully into his hands, does not belong to his ward, and the sureties on his bond are not responsible for his failure to pay it over to a successor.

3. SAME—ACCOUNTING—JURISDICTION.

A court which entertains a proceeding for an accounting by the committee of a lunatic has no power to make any order or judgment relating to moneys which have come to his hands wrongfully, and the sureties on his bond are not bound by a decree of such court adjudging him accountable therefor.

Appeal from Onondaga county court.

Action by Edward O. Johnson, committee of the person and the estate of Anna A. C. Fries, a lunatic, against Webster R. Chamberlain and William E. Ayers. From a judgment dismissing the complaint after a trial before the court, without a jury, plaintiff appeals. Affirmed.

On or about the 15th day of December, 1886, one Anna A. C. Fries was duly adjudged a lunatic by the county court of Onondaga county, and, by the same judgment, James A. McFarren was duly appointed a committee of her person and estate, upon his executing a bond, with sureties, in the sum of $7,000, conditioned for the faithful discharge of his duties as such committee. Thereafter, and upon the 30th day of the same month, McFarren filed his official bond, executed by these defendants as his sureties, in the clerk's office of Onondaga county, the same having been duly approved by the judge of that county; and he thereupon entered upon the discharge of his duties as such committee, and continued to act as such until about the 11th day of February, 1895, when he resigned, and the plaintiff was appointed in his stead. Upon the inquisition in the lunacy proceedings it was found that the estate of the lunatic consisted of about $1,000 of personal property, and not to exceed $2.500 of real property. After entering upon the performance of his duties, McFarren, as such committee, came into possession of the sum of $1,328.50, the avails of a policy of life insurance upon the life of the deceased husband of the lunatic; and upon the 17th day of January, 1887, he received the further sum of $1,515.79, the proceeds of an attempted sale by him of the lunatic's interest in certain real estate which she had inherited from her father. All the moneys received by McFarren were deposited to his credit in a savings bank, from which they were from time to time withdrawn by him; and, of these moneys so deposited and withdrawn, the sum of $1.467.53 was properly and legally expended by the committee; but the remainder thereof, which was very nearly equal to the amount received by him from the attempted sale of the interest of the lunatic in the real estate inherited by her, was converted by McFarren to his own use. At the time McFarren attempted to dispose of the lunatic's interest in the real estate, no proceedings were taken to accomplish that object, but he simply executed deeds of such interest, signing the same, "Anna A. C. Fries, by J. A. McFarren, Committee, etc." In January, 1895, a referee was duly appointed by the county court of Onondaga county to take and state the account of such committee: and on the 16th day of March, 1895, the referee filed his report, showing that at that date the committee was indebted to the estate of the lunatic in the sum of $2,020.08. This report was subsequently confirmed by the county court of Onondaga county, and an order was thereupon made, directing McFarren to pay over to the plaintiff the sum so found due from him to the estate of the lunatic. No part of such sum was ever paid, however, and this action was brought to recover the same of the defendants, as sureties upon the official bond of McFarren, who, it is conceded, is now insolvent.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Frank Hopkins, for appellant.
William B. Fuller, for respondent Chamberlain.
Frank Hiscock, for respondent Ayers.

ADAMS, J.    By reference to section 2337 of the Code of Civil Procedure, it will be found that the committee of the person or ·property of a lunatic is not invested with any power to act as such until security is given, if required ·by the court, in the same manner and to the same effect as is exacted of a person who is appointed guardian of the estate of an infant.    In this case it is made to appear that the court did require of McFarren, as a condition of his exercising the functions of committee of the person and estate of the lunatic, that he should furnish satisfactory security, and this condition was complied with by the filing of a bond in the penalty of $7,000, to which these defendants were sureties.    It becomes important, therefore, to ascertain the nature and extent of the obligations which they thereby assumed.

It is provided by section 2830 of the Code of Civil Procedure that:

"Before letters of guardianship of an infant's property are issued by the surrogate's court, the person appointed must, besides taking an official oath, as prescribed by law, execute to the infant, and· file with the surrogate, his bond, with at least two sureties, in a penalty, fixed by the surrogate, not less than twice the value of the personal property, and of the rents and profits of the real property; conditioned that the guardian will, in all things, faithfully discharge .the trust reposed in him, and obey all lawful directions of the surrogate touching the trust; and that he will, in all respects, render a just and true account of all money and other property received by him, and of the application thereof, and of his guardianship. whenever he is required to do so by a court of competent jurisdiction.   *    *    *  "

Thus, it will be seen that the measure of the defendants' undertaking was that the committee should faithfully discharge the trust reposed in him, render a just and true account of all moneys and other property received by him, and obey all lawful directions of the court respecting his trust.    And this action is brought upon the theory that the defendants' principal has failed to observe one of the conditions of the bond in suit, in that he has omitted to pay over to the plaintiff, as his successor in office, the moneys remaining in his hands, which, as we have seen, were the proceeds of the lunatic's interest in certain real estate which the committee had assumed to sell, without first applying to the court for permission so to do.    The primary question to be considered, therefore, is whether the defendants' undertaking can be said to include a liability for the consequences of such a breach as the one to which reference has just been made.    It is, of course, elementary that contracts of sureties must be strictly construed, and that they will not be extended or enlarged by implication. People v. Backus, 117 N. Y. 196, 22 N. E. 759.    And, to make a direct application of this rule· to the case in hand, it may be safely asserted that the full measure of the defendants' obligation was to answer for any failure upon the part of their principal to account for and pay over, upon the order of the court, all moneys which might legally ·come into his hands ·as such committee.    And, if this be true, the converse of the proposition must be equally so, that if the committee, by a proceeding which was clearly unlawful and ultra vires, came into possession of moneys or property under a claim that the same belonged to the lunatic, the defendants would not be liable therefor, as sureties upon his bond.    Field, Infants, § 148; Livermore v. Bemis, 2 Allen, .394; Merrells v. Phelps, 34 Conn. 109; Ballard v. Brummitt, 4 Strob.

Eq. 171. A satisfactory solution of the question under consideration can only be reached, therefore, by determining whether or not McFarren, as such committee, was authorized to deal with the real estate of his cestui que trust in the manner he did, or, in other words, whether, in selling her real estate without first obtaining an order of the court so to do, he acted so far outside and beyond the scope of his authority as to relieve the defendants from liability upon his bond.

By reference to section 2339 of the Code of Civil Procedure it will be seen that, in respect of a lunatic's real estate, the powers of a committee are confined within very stringent limitations; for, after declaring that a committee is at all times subject to the direction and control of the court, it provides further:

"But a committee of the property cannot alien, mortgage or otherwise dispose of, real property, except to lease it for a term not exceeding five years, without the special direction of the court, obtained upon proceedings taken for that purpose, as prescribed in title seventh of this chapter."

The "proceedings" here spoken of are statutory and special in their nature. Their design is to devest the lunatic of his title to real estate, and to transfer it to another; and it is settled beyond all cavil that to accomplish this object, which is clearly in derogation of the common law, every prerequisite must be fully and literally observed. Battell v. Torrey, 65 N. Y. 294; In re Valentine, 72 N. Y. 184; Ellwood v. Northrup, 106 N. Y. 172, 12 N. E. 590; Pharis v. Gere, 110 N. Y. 336, 18 N. E. 135. It is hardly necessary to specify the various requirements of this special proceeding which in this particular instance the committee failed to fulfill, because it is conceded that he ignored them altogether, and apparently supposed that he could convey the lunatic's title just as he could his own,—that is, by the execution and delivery of an ordinary deed; and that is all that he attempted to do. That he thereby transferred no title, and that the purchaser took nothing of greater value than a piece of blank paper, are facts which must be apparent to any one. And it must be equally clear that the money which was paid McFarren in consideration of this attempted transfer did not come lawfully into his hands; neither did it belong to his cestui que trust; and it would therefore seem to follow that, whatever right of action the purchaser might have to recover back his money, the defendants, as sureties upon the bond of the committee, never assumed any liability for the failure of their principal to account to his successor in office therefor. Lyman v. Conkey, 1 Metc. (Mass.) 317; Williams v. Morton, 38 Me. 47; Henderson v. Coover, 4 Nev. 429.

While discussing this feature of the case, it may be worth while to suggest that, even had resort been had to the statutory proceedings for the sale of the lunatic's real estate, these defendants, as sureties upon the general bond of the committee, would have incurred no additional liability by reason of the proceeds of such sale coming into the hands of the committee, inasmuch as a special and separate bond is required in such cases. Code Civ. Proc. § 2351.

It is insisted, however, that the defendants are estopped from questioning the order of the county court which confirmed the report of the referee, and adjudged that McFarren, as committee, was

chargeable with the moneys which came into his hands from the attempted sale of the lunatic's real estate; and it only remains to determine what, if any, importance attaches to this contention. In considering this question, it may be assumed that the defendants, as sureties upon the bond of the committee, are privy to all proper proceedings against their principal, and that, if the committee had accounted in the usual manner, the defendants would ordinarily be concluded by any judgment or decree which would conclude their principal. Harrison v. Clark, 87 N. Y. 572; Deobold v. Oppermann, 111 N. Y. 531, 19 N. E. 94; Douglass v. Ferris, 138 N. Y. 192, 33 N. E. 1041. But, while the rule just stated is not to be questioned as a general proposition, it, nevertheless, has its limitations, one of which is that the judgment or decree against the principal must proceed from a court having jurisdiction to make the same, and it must also be free from collusion and fraud. Deobold v. Oppermann, supra; Douglass v. Ferris, supra; Browning v. Vanderhoven, 4 Abb. N. C. 166. In this case, as we have seen, the committee received these moneys wrongfully. They constituted no part of the estate of his cestui que trust, and therefore, in a proceeding against him in his official capacity, the court entertaining the same had no right to make any order or judgment relating thereto. But whether or not this may be regarded as an available defense to the sureties in the present action, we think there is another and a complete answer to the plaintiff's contention, which is that the power to sell the real estate of the lunatic was not conferred upon the committee by the order appointing him. It was a separate and distinct power, which, as has already been pointed out, can only be conferred by a strict compliance with all the requirements of the statute creating it, one of which is that an additional bond shall be given, as security for the proper disposition of the moneys realized from the estate sold. Now, all that these sureties have undertaken to become responsible for is the faithful performance of the usual and ordinary duties assumed by their principal, as committee, and not any special obligation which he might assume while in the discharge of his trust, and for which the law provides and exacts additional security. To so construe, therefore, the bond in suit as to bind the sureties to some responsibility which clearly was not within their contemplation, nor within the contemplation of the law when they executed it, would extend their liability to a point beyond which, we think, the case will warrant (White v. Ditson, 140 Mass. 351, 360, 4 N. E. 606); and this the order of the county court does not attempt to do. These views necessarily lead to an affirmance of the judgment appealed from.

Judgment affirmed, with costs. All concur.