(41 App. Div. 229.)

RHODES v. CASWELL.

(Supreme Court, Appellate Division, Second Department. June 6, 1899.)

1. EXECUTORS AND ADMINISTRATORS — VOIDABLE SALE BY EXECUTOR — RATIFI-
   CATION BY DECREE ON ACCOUNTING.
   A sale of property by executors, voidable because made to an executor's wife, is validated by a subsequent decree of the surrogate, on an accounting by the executors, finding that the sale was for full value, although a portion of the estate may vest in persons not in being, and hence not parties to the proceeding before the surrogate.

2. SAME—RATIFICATION BY ACCEPTANCE OF PROCEEDS.
   Where a portion of an estate left in trust is to be converted and held by the trustee as money, a receipt by him for his share of the proceeds of the executor's sale of land belonging to the estate, which was voidable because made to the executor's wife, ratifies the sale.

3. WILLS—ESTATE IN TRUST—EQUITABLE CONVERSION.
   A will directing the executors to "pay over" one equal third part of the estate to a trustee for certain of the legatees, the trustee "to hold the amount so paid over," and "to invest the same upon bond and mortgage," directs an equitable conversion of the testator's realty.

Action by Caroline A. Rhodes against William W. Caswell, submitted on agreed statement of facts. Judgment for plaintiff.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

William A. McQuaid, for plaintiff.
David B. Ogden, for defendant.

CULLEN, J. The controversy submitted to the court for determination relates to the title to a tract of land in Westchester county, for the sale of which the plaintiff has entered into a contract with the defendant. If the plaintiff's title is good and marketable, judgment is to be rendered in her favor for a specific performance of the contract; if not, judgment is to be rendered for the defendant for the recovery of the payment made by him on account of the purchase money, and for his expenses in the examination of the title. Jane A. Fuller died December 13, 1894, seised in fee simple of a tract of land which includes the premises in controversy, leaving a will, by which she disposed of her property as follows:

"Ninth. I direct my said executors to divide all the rest, residue, and remainder of my estate into three equal parts, and to dispose of them as follows: I direct my said executors to pay over one of said equal one-third parts to my daughter Caroline A. Rhodes, or to her children, share and share alike, if she

should then be dead, leaving issue surviving. I direct my said executors to pay over one other of said equal one-third parts to my daughter Kate Helena Belcher, or to her children, share and share alike, if she should at the time of my death be dead, but leaving issue surviving her. I direct my executors to dispose of the remaining one of the aforesaid equal one-third parts as follows: To pay over the same to the aforesaid New York Life Insurance and Trust Company after deducting therefrom and retaining in their hands two-thirds of the amount due to me at the time of my death upon all notes held by me at the time of my death made to me by my daughter Mary S. Rushmore for money loaned or hereafter loaned by me to her, and I direct said New York Life Insurance and Trust Company to hold the amount so paid over to them by my executors in trust for the following uses and purposes: To invest the same upon bond and mortgage on real estate, or in first mortgage bonds of railroad companies which have not prior to said investment, and within five years thereof, defaulted in the payment of interest on their first mortgage bonds; or to invest the same in such securities as said trust company is authorized by law to invest trust funds; and to pay the income therefrom semi-annually to my daughter Mary S. Rushmore during the period of her natural life, and upon her death to pay over said principal sum so held in trust to her children, share and share alike, the issue of any deceased child of hers to receive the share which would have gone to its parent if living at the time of the death of my said daughter Mary S. Rushmore; and I further direct my said executors to pay over to my daughters Caroline A. Rhodes and Kate Helena Belcher, one-half to each, the two-thirds of the amount of the notes due to me from my said daughter Mary S. Rushmore, and held by me at the time of my death, and deducted and retained by my executors as I have above directed, and to cancel said notes. Tenth. I hereby authorize and empower my executors hereinafter named to sell and dispose of any part or all of my estate, either real or personal, at public or private sale."

She appointed her two sons-in-law, Bradford Rhodes and Zachariah Belcher, and her cousin, George R. Howe, executors of her will. Under the power of sale, the executors, on March 18, 1896, conveyed the tract to the plaintiff, who is the wife of the executor Bradford Rhodes, for the sum of $67,000. On July 6, 1896, the executors filed their account in the surrogate's court, wherein they charged themselves with the amount received on said sale, and instituted proceedings for its judicial settlement. There were made parties to this proceeding all the legatees and next of kin or heirs at law of the deceased, including the four infant children of Mrs. Rushmore. Objections were made to the account, but on October 24, 1896, a decree was made by the surrogate, which adjudged that the price obtained on the sale of the land was its full and fair value, which settled the accounts of the executors, and directed a distribution of the fund in court. Mrs. Rhodes, Mrs. Belcher, and the New York Life Insurance & Trust Company each received the distributive share as determined by the decree of the surrogate. In April, 1899, Mrs. Belcher and Mrs. Rhodes executed a confirmatory deed to the plaintiff.

It is claimed by the defendant, and not strenuously controverted by the plaintiff, that the sale by the executors to the plaintiff was voidable at the election of any of the parties in interest, because she was the wife of one of the executors. We shall therefore, without any discussion, assume the correctness of this proposition. But it is insisted on the part of the plaintiff that the decree of the surrogate, and the acceptance by the parties of their shares of the proceeds of sale with knowledge of the original infirmity of the sale,

have ratified the sale, so that its validity is not subject to be here-
after impeached. As to the estoppel of the decree of the surrogate's
court, counsel for the plaintiff relies on the authority of Insurance
Co. v. Schwaner, 36 Hun, 373, affirmed in 101 N. Y. 681, on the
opinion of Mr. Justice Daniels at the general term. In that case
executors had sold real estate under a power of sale to a dummy,
who conveyed it back to themselves. After the executors had ac-
quired title individually to the property, they mortgaged it. The
property was subsequently sold under the foreclosure of a prior mort-
gage made by the testator, and on the sale a surplus was realized.
In proceedings to obtain the surplus moneys, the contest was be-
tween the second mortgagee and the beneficiaries under the will,
who claimed that the sale by the executors to themselves was fraudu-
lent in law, and voidable. These beneficiaries were infants at the
time of the decree. It was held that, as by the statute (section 2726,
Code Civ. Proc.) the executors were required to account in the surro-
gate's court for the proceeds of any sale of the real estate of their
testator, the decree of the surrogate on such an accounting was con-
clusive as to the validity of the sale. It is sought to distinguish the
present case from the one cited, because here the trust estate may,
upon the death of Mrs. Rushmore, vest in persons not now in being,
and hence not parties to the proceeding before the surrogate. We
think that this fact does not take the case without the authority of
the Schwaner Case. If it be assumed that a decree of the surrogate
on an accounting of the proceeds of a sale can validate a sale by
executors otherwise voidable, we think that the same rule must
obtain in that litigation as in others; that is to say, that if all the
proper living persons are made parties to it, persons not in esse
are concluded by the judgment. In Kent v. Church of St. Michael,
136 N. Y. 10, 17, 32 N. E. 705, it is said:

"Where an estate is vested in persons living, subject only to the contingency
that persons may be born who will have an interest therein, the living owners
of the estate, for all purposes of any litigation in reference thereto, and af-
fecting the jurisdiction of the courts to deal with the same, represent the
whole estate, and stand not only for themselves, but also for the persons un-
born."

Referring to this declaration, it is said in Kirk v. Kirk, 137 N. Y.
510, 516, 33 N. E. 553:

"Whatever doubt there may have been upon this point has been put to rest,
and the further discussion of the question foreclosed, by the recent decision of
this court in Kent v. Church of St. Michael."

The learned counsel for the defendant questions the correctness
of the grounds on which the opinion in the Schwaner Case proceeded.
We shall not follow him in his discussion, as we regard the affirm-
ance of the case by the court of appeals on the opinion of the gen-
eral term (12 N. Y. Supp. 326) conclusive upon us.

We are also of the opinion that, apart from the question of the
effect of the decree of the surrogate, the receipt by the trust com-
pany of the proceeds of sale ratified the conveyance to the plaintiff,
and concluded all the beneficiaries under the trust which the company
represented. The doctrine "that an acceptance by the beneficiary

of the proceeds of a sale made by a trustee or donee of a power indirectly to himself　*　*　*　with full knowledge, and by persons free from disability, would be such an affirmance" (Boerum v. Schenck, 41 N. Y. 182, 190), is not denied. But it is contended that an acceptance by the trustee does not conclude the remainder-men who are entitled to receive the principal upon the termination of the trust. The question of how far the action of a trustee can bind persons interested in the trust estate, in our judgment, depends on the estate of the trustee. Ordinarily, in a trust in lands, where the trust is to receive and apply the profits to the use of the beneficiary during life, and the remainder is given to others, the trustee takes only an estate for the life of the beneficiary, and he can no more conclude the remainder-men than if the estate had been a legal instead of an equitable one. But where the trustee is to convert the land into money, and the remainder-men are not to receive land, but only the proceeds of it, the estate of the trustee is a fee, and his conduct as to the land may conclude all the beneficiaries of the trust. On this ground it was held in Bennett v. Garlock, 79 N. Y. 302, that the statute of limitations having run against the trustee barred the title of the remainder-men who were to share in the proceeds of sale. So, also, it was held in Delafield v. Barlow, 107 N. Y. 535, 14 N. E. 498, that remainder-men whose interests were of the character hitherto described were not necessary parties to a partition action. We think it plain that the testator, by her will, directed an equitable conversion of her realty. The case is much stronger than that of Delafield v. Barlow. While the power of sale given to the executors is, in its terms, only discretionary, the language of the gifts to the two daughters directly and to the trustee in favor of the third clearly evidences the intent that such gifts should be made only in money. The executors are directed to "pay over" one equal third part to each of two daughters. As to the trust share, they are directed to "pay over" the same to the trustee, who is enjoined "to hold the amount so paid over to them," and "to invest the same upon bond and mortgage," etc. The learned counsel for the defendant contends that, assuming that the only interest which the ultimate remainder-men take under the will is not in the land itself, but in its proceeds, still the same rule applies to the trust in the proceeds as would obtain in a similar trust of real property; and that the interest or estate of the remainder-men in the fund is not represented by the trustee, but is independent of his estate. This claim we think is erroneous. The rule in cases of personalty and in those of realty is not the same. "If, however, the subject-matter of the gift to trustees is personal estate, the whole legal interest will vest in them without words of limitation. They may generally dispose of personal estate absolutely, being compelled to account for it." Perry, Trusts, § 318. There is an authority in this state limiting the doctrine quoted. In Nicoll v. Walworth, 4 Denio, 385, a long term of years in certain real estate was conveyed to a trustee to receive the rents and profits, and apply them to the support of a beneficiary during her life, and after the death of the beneficiary the grantor gave them to his natural daughter. It was held that the trustee only

took an estate for life, and that on the decease of the beneficiary the unexpired term vested in the daughter. The court treated the case as a trust of realty. But, assuming that a trust may be created in personalty, in which the estate of the trustee would be confined to the duration of the trust, we think it can be only so created in a specific chattel or chose in action which may endure beyond the trust term. Where the trust estate is of the character of that given by this testator,—a fund that is to be invested, and necessarily reinvested, the securities representing which the trustee may collect or dispose of,—we think the doctrine laid down by Mr. Perry must obtain. We have never known of a remainder-man being made a party plaintiff to an action brought by a trustee for the foreclosure of a mortgage executed to him as such trustee. If in such a foreclosure judgment went against the trustee, it would hardly be questioned that the judgment would be conclusive on the remainder-men. In trusts of this character we think it must be considered that the whole title to the trust fund is in the trustee, and that all the remainder-men have is the right to an account. The estate of such a trustee is similar to that of an executor or administrator, who, as far as third parties are concerned, is regarded as having the whole title. Lockman v. Reilly, 95 N. Y. 64. By the will the trustee was to receive from the executor, not the land, but money; and the ultimate remainder-men at the termination of the trust are not to receive from the trustee the money which the latter received from the executor, but either the securities in which by the will that money has been invested or the money which will arise from the sale of the securities. We are of opinion that the right to affirm or avoid the sale made by the executors to the wife of one of their number vested wholly in the trustee, so far as the one-third share it represents is concerned, and that its acceptance of the proceeds has ratified the sale, and concluded every one interested, or that may be interested, in the trust fund. Of course, all this is said of the power of the trustee on the assumption that there has been neither fraud nor collusion in its action.

There should be judgment for the plaintiff on the agreed statement of facts, with costs. All concur.