(55 App. Div. 454.)

## ALLEN v. KELLY.

(Supreme Court, Appellate Division, Fourth Department. November 20, 1900.)

1. DECEASED GUARDIAN—ACTION ON BOND—CONDITION PRECEDENT—ISSUE OF EXECUTION AND RETURN.

Code Civ. Proc. § 2606, provides that where a guardian dies the surrogate can, on the petition of his successor, compel the executor or administrator of the decedent to account, and that with respect to the liability of the sureties on, and for the purpose of suing on, the decedent's official bond, a decree against his executor or administrator, rendered on such accounting, has the same effect as if an execution issued on a surrogate's decree against the property of decedent had been returned unsatisfied during his lifetime; and hence no issue and return of execution are necessary in such a case as a condition precedent to an action on the decedent's bond, the effect of the decree on the accounting being to establish the fact that at the death of the guardian he had no property under which the amount due the obligee could be collected, though there may be no express finding in the decree that his estate is insolvent.

2. GENERAL GUARDIAN'S BOND—SCOPE—MONEYS ARISING FROM SALE OF INFANT'S REALTY.

Code Civ. Proc. §§ 2351, 2352, 2359, 2361, relating to the sale of an infant's realty, require the appointment, in the proceeding therefor, of a special guardian, who must file a bond conditioned to pay over, invest, and account for all moneys received by him in the proceeding, which moneys are to be deemed realty, and are to be invested for the infant's benefit under the direction of the court, whose ward the infant is. *Held*, in view of these provisions, that the general guardian had nothing to do with the proceeding, and was not entitled to receive the moneys derived from the sale, and hence his bond did not embrace their receipt and disposition.

3. SAME—LIABILITY OF SURETIES.

Whatever the liability of the general guardian between himself and his ward, he cannot enlarge the obligation of the sureties by receiving and charging himself with moneys belonging to his ward which he had no legal right to receive, and for which a special bond was required by law to be given.

Williams and Laughlin, JJ., dissenting.

67 N.Y.S.—7

Appeal from trial term, Monroe county.

Action by John S. Allen against Frank X. Kelly, as administrator, etc. From a judgment for defendant, plaintiff appeals. Reversed and new trial granted.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

John R. Kiley and George E. Warner, for appellant.
Charles M. Williams, for respondent.

WILLIAMS, J. The judgment should be reversed, and a new trial ordered, with costs to appellant to abide event. The action was brought against the sureties upon the bond of James W. Fahy as general guardian of the plaintiff to recover a balance of moneys alleged to have been received by such guardian, belonging to the plaintiff. The guardian was appointed June 23, 1885, by the surrogate of Monroe county. He died April 3, 1898, and his wife was appointed his executrix May 26, 1898. A new general guardian of plaintiff was appointed, and an accounting was had before the surrogate as to the trust of the deceased guardian, resulting in a decree entered September 24, 1898, adjudging a balance due the plaintiff of $1,795.77. The executrix of the deceased guardian was allowed $110 as costs, payable from this amount, and she was ordered to pay over the balance of $1,685.77 to the new guardian. She paid over $552.33, leaving a balance unpaid of $1,133.44, for which this action was brought. The plaintiff is now of age. This $1,133.44 is made up of two items,—$970.32 and $163.12. As to the first item of $970.32, the surrogate, by the decree, found that this amount "was received by the [deceased guardian] in proceedings in the Monroe county court for the sale of an interest of the said infant in real estate; that in such proceedings the infant did not unite in [the] petition, and said county court did not require any additional bond of the said [guardian], or require any security therefor, as provided by the rules of the court; that the sureties [upon his bond] claim that they should not be liable for said sum,   *   *   * and this decree is made without prejudice to any defense said sureties may have in any action against them, or either of them, on said bond." The trial court held that the sureties were not liable for this amount, because the deceased guardian did not receive the same by virtue of his appointment as such general guardian, or by virtue of his guardian's bond. The court also held that no recovery could be had for either of the two items, because no execution had been issued upon the surrogate's decree, and no return made of such execution. The latter finding, if correct, defeated the plaintiff's right of action, without regard to the question raised as to the item of $970.32.

While section 2607 of the Code of Civil Procedure provides that "where an execution issued against the property of a   *   *   * guardian has been returned wholly or partly unsatisfied, an action to collect the sum remaining uncollected may be maintained upon his official bond in the name of the person in whose favor the decree was made," and thereby the issue and return of an execution

are made ordinarily conditions precedent to the maintenance of such an action, yet it is also provided by section 2606 that "where a * * * guardian * * * dies, the surrogate has the same jurisdiction upon the petition of his successor * * * to compel the executor or administrator of the decedent to account, which it would have, against the decedent if his letters have been revoked by a surrogate's decree. With respect to the liability of the sureties in, and for the purpose of maintaining an action upon the decedent's official bond, a decree against his executor or administrator, rendered upon such an accounting, has the same effect as if an execution issued upon a surrogate's decree, against the property of decedent, had been returned unsatisfied during decedent's lifetime." And it would seem that under this latter provision no issue or return of an execution was necessary in this case. The effect of the decree of the surrogate was to establish the fact that at the death of the guardian he had no property out of which the amount due the plaintiff could be collected. Potter v. Ogden, 65 Hun, 27, 19 N. Y. Supp. 594; Id., 136 N. Y. 384, 33 N. E. 228; Martin v. Hann, 32 App. Div. 602, 53 N. Y. Supp. 186. This seems to be the effect in this case of the provisions of the Code, although there was no finding in the surrogate's decree that the estate of the deceased guardian was insolvent. In the two cases above cited there were such findings, or at least the accounts rendered by the representative contained such statement. It does not appear in this case whether the executrix of the deceased guardian had funds of the estate in her hands to pay the amount directed to be paid by the surrogate's decree or not. It appears that she did pay after the decree was made, from some source, the $552.33. The only question is whether the issue and return of the execution were conditions precedent to the maintenance of the action, and in such a case as this the statute seems not to require them. The trial court therefore erred in holding that there could be no recovery for anything in the case,—not even the item of $163.12.

As to the item of $970.32, it would seem that the decree of the surrogate was conclusive against the sureties upon the bond as to the amount due from the guardian to the plaintiff. The sureties were parties to the accounting, and appeared therein, though the decree would have been equally binding upon them if they had not been such parties and had not appeared. Douglass v. Ferris, 138 N. Y. 192–201, 33 N. E. 1041; Altman v. Hofeller, 152 N. Y. 498, 502, 503, 46 N. E. 961; Martin v. Hann, above. The provision in the decree that the same was without predjudice to any defense the sureties might have in any action against them on the bond was unauthorized, and could not be held to change the legal effect of the decree, as conclusive against the sureties as to the amount due from the guardian to the ward. Altman v. Hofeller, above. On the merits of the claim, however, it must be held that the sureties are liable for this item of $970.32. The objections to their liability are (1) that the court acquired no jurisdiction of the proceedings for the sale of the real estate, because the infant was not himself a party thereto, and did not join in the petition, he being

over 14 years of age; (2) the court had no power in the proceedings
to direct the $970.32 to be paid to the guardian, without his giving
security on improved and unincumbered real estate as required by
section 2361, Code, and rule 59 of the court; (3) and, generally, that
a liability for such moneys was not within the purview of the bond
of the general guardian. It is undoubtedly true that the proceed-
ings were irregular in the respects stated in the first two objections
made. The infant should have joined in the proceeding, and in the
petition commencing the same, and there should have been security
on real estate required by the court before the money was directed
to be paid to the general guardian. But the proceedings were com-
pleted, the real estate was conveyed to the purchaser, the money
was directed to be paid to the general guardian, and he actually re-
ceived the same. The executrix of the guardian accounted for the
same before the surrogate, and the decree was made on such ac-
counting. The plaintiff, by his new guardian, was a party to such
accounting, and was bound by the decree. More than this, being
now of age, the plaintiff has elected to affirm the sale, and is seek-
ing in this action to recover the $970.32 so received by the deceased
guardian, and accounted for by his executrix. The plaintiff cannot
be heard now to claim that the sale of the property was invalid,
or that the purchaser acquired no title thereto. In re Brown, 72
Hun, 160, 25 N. Y. Supp. 694; Insurance Co. v. Schwaner, 36 Hun,
378; Id., 101 N. Y. 681; Rhodes v. Caswell, 41 App. Div. 229, 58
N. Y. Supp. 470; Taylor v. Klein, 47 App. Div. 343, 62 N. Y. Supp.
4; Dodge v. St. John, 96 N. Y. 260–263; Douglass v. Ferris, 138 N.
Y. 192–201, 33 N. E. 1041. The result is, therefore, that the guard-
ian who received this money was liable to account to the plaintiff
for the item in question, $970.32, the same as if the proceedings
for the sale of the real estate had been in all respects regular, and
the court had required the security upon improved and unincumbered
real estate to be given, as required by the statute and rules of the
court, before the money was paid to the guardian. The guardian
himself or his executrix could not, of course, claim, having received
the money, that he was not liable to account to his ward therefor.
This disposes of the first two objections to the liability of the sure-
ties.

As to the third objection, that a liability for these moneys was
not within the purview of the bond of the general guardian, the
condition of the bond, as given, which was strictly in accordance
with the provision of the statute (section 2830, Code), was broad
enough to cover a liability for these moneys. The language is that
the principal "shall in all things faithfully discharge the trust im-
posed upon him, and obey all lawful directions of the surrogate
touching the trust, and shall render a just and true account of all
moneys and other property received by him, and of the application
thereof, and of his guardianship, whenever he is required to do
so by a court of competent jurisdiction." The guardian having re-
ceived the moneys in question under circumstances requiring him
to account therefor to his ward, the sureties are liable, under the
statute and the condition of their bond, for the failure of their prin-

cipal so to account and pay over the moneys. In Re Brown, above, Brown was general guardian of an infant, and also executor under the will of her grandmother, and received moneys bequeathed to the infant under the will. He was appointed general guardian six months before the death of the testator, under whose will he was made executor, and the legacy was given the infant. On his accounting as executor, Brown credited himself with having paid the legacy over to himself as guardian, and a decree was entered by the surrogate discharging him as executor. Eighteen months afterwards he was removed as guardian, and required to account as such. In his account as guardian he charged himself with having received the legacy as guardian, and a decree was made by the surrogate accordingly. Having failed to pay over the moneys found by the decree to be in his hands, an action was brought against the sureties on his guardianship bond. The sureties contended that the only way in which he could have transferred the moneys from himself as executor to himself as guardian would have been pursuant to a decree of the surrogate's court requiring the general guardian first to give a new bond, under section 2746, Code, and, inasmuch as no such decree had been made or bond given, there was no legal transfer of the legacy from himself as executor to himself as guardian. The court, among other things, said:

"The statute requires the surrogate to exact such a bond from the guardian, to more certainly assure the property of the infant's estate, because it frequently happens that a bequest to an infant succeeds the granting of letters of guardianship, and therefore is not considered in determining the value of the infant's estate, as above, for the bond. And this provision of law is generally enforced, but an omission to do so could not avail a guardian receiving the moneys. He could not say, 'I cannot be compelled to account for these moneys, because the surrogate's court omitted to decree that I should give a special bond, as provided by the statute. He would not be permitted to dispute that the moneys paid to him under such circumstances were the moneys of the ward, and the statute, as well as his bond, obliges him to render a true and just account of all moneys and property received by him, and the application thereof. So, if he did receive these moneys as general guardian, he must account for them; and that for which he is chargeable on an accounting, his sureties are responsible for. * * * The general guardian could not be heard to deny the right of the ward to a decree charging him with such amount, nor would the sureties be in any better position than their principal. An exception to this general rule would be presented if a guardian and ward should conspire together for the purpose of creating a situation where the guardian would be relieved at the expense of his sureties. But that is not this case."

Johnson v. Chamberlain, 46 N. Y. Supp. 132, decided by this appellate division, is clearly distinguishable from this case, and is not controlling here. All that was held in that case was that the sureties upon the bond of a committee of a lunatic were not liable for the failure of the committee to account for and pay over moneys which came into the hands of the committee unlawfully and ultra vires, under a claim that the moneys belonged to a lunatic. The committee assumed to sell the lunatic's real estate without any proceedings in court whatever, and received the price thereof. In the present case the only claim is that the proceedings taken for the sale of the infant's real estate were irregular. The money was not received by the guardian illegally or ultra vires. The failure

to require the security under the Code, as held in Re Brown, was a failure to properly protect the ward, but the guardian and his sureties were equally liable for a failure to account for the moneys so received by the guardian. The cases of Muir v. Wilson, Hopk. Ch. 512, and Cook v. Lee, 6 Paige, 158, are also distinguishable from this one. In the Muir Case, Wilson was general guardian, and also guardian ad litem in an action for partition. The moneys arising from the sale, and belonging to the infant, were paid to Wilson. There was no order by the court that the moneys be paid to the general guardian. There was a separate bond for Wilson as to each guardianship. It was held that the moneys were in the hands of Wilson as guardian ad litem, and not as general guardian, and that the sureties on his bond as general guardian were not liable. In the Cook Case the general guardian and guardian ad litem, in partition, were different persons. The commissioners, who sold the property without any order of the court, paid moneys from the sale in partition, belonging to the infant, to the general guardian, instead of the guardian ad litem. The guardian ad litem did not direct or assent to the payment of the moneys to the general guardian. The general guardian squandered the money and became insolvent. A bill was filed to compel the guardian ad litem to account for the moneys, on the ground that the same had been lost through his negligence. The court held that the remedy was against the commissioners who made the payment to the general guardian without authority, and not against the guardian ad litem. Both of those cases were decided upon the theory that a general guardian could not, as such, receive the proceeds of the sale of real estate belonging to the ward. Such is not the law now. The statute expressly provides now for the payment of such moneys to general guardians, imposing upon the court the duty of protecting the fund by the requiring of additional security. It cannot be said, under the law as it now exists, that the payment of such moneys to a general guardian is unlawful or ultra vires. Clearly, the sureties upon the bond of a general guardian, when they execute such a bond, must be held to have in contemplation the possibility that such moneys may come into the hands of their principal, and that their liability may be made to extend to and cover a failure to account for such moneys. There is no provision of statute that the sureties upon the general bond of the guardian shall not be liable as to such moneys upon the giving of the additional bond required by the Code and rules of the court. Indeed, the statute and the rule both provide for the payment of such moneys to the general guardian without the giving of such additional security, so far as may be necessary from time to time, for the maintenance and support of the infant, and certainly as to such moneys the sureties upon the bond of the general guardian would be liable. It may also be said that there is no proof in this case that all of said moneys (the $970.32) were not so properly paid over in this case, without requiring the additional security. There is the presumption, merely, that they were not, because they were not so used, but are sought to be recovered in this action. In

any view of the matter, the trial court erred in holding the sureties not liable for the item of $970.32.

For the reasons hereinbefore stated, the judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

LAUGHLIN, J., concurs.

ADAMS, P. J. I concur in so much of the opinion of Mr. Justice WILLIAMS as decides that the failure to issue an execution upon the surrogate's decree, and to have the same returned, did not defeat the plaintiff's right of action, but am constrained to dissent from his conclusion respecting the liability of the sureties for the moneys received by the general guardian upon the sale of the infant's real estate. Confessedly, the proceedings for such sale were irregular; and while, as between the infant and his general guardian, such irregularities might be waived by the former upon his reaching his majority, it is doubtful if his waiver would affect the liability of the sureties upon the guardian's bond, their obligation being strictissimi juris. But, however this may be, I do not think that a liability for moneys arising from a sale of the infant's real estate was within the purview of the general guardian's bond. A proceeding for the sale of an infant's real estate is statutory, and one in which all the requirements of the statute should be literally observed. One of such requirements is that a special guardian of the infant must be appointed, and that such special guardian must file a bond conditioned for the paying over, investing of, and accounting for all moneys received by him in the proceeding (Code Civ. Proc. §§ 2351, 2352), which moneys are to be deemed real property, and are to be invested for the benefit of the infant, under the direction of the court, whose ward the infant is. Code Civ. Proc. §§ 2359–2361. Thus it will be seen that the general guardian has nothing to do with a proceeding of this nature, and is not entitled to receive the moneys arising therefrom. It would seem to follow, therefore, that the ordinary bond of such a guardian does not embrace the receipt and disposition of moneys arising from the sale of the real estate of his ward; and this, as I understand it, is the rule laid down by the adjudicated cases. Muir v. Wilson, Hopk. Ch. 512; Cook v. Lee, 6 Paige, 160. Such being the rule, I think it equally well settled that whatever the liability of the general guardian may be, as between himself and his ward, he cannot enlarge the obligation of his sureties by receiving and charging himself with moneys which he had no legal right to receive, and for which a special bond had been given. Johnson v. Chamberlain (Sup.) 46 N. Y. Supp. 132–135; Lyman v. Conkey, 1 Metc. (Mass.) 317; Williams v. Morton, 38 Me. 47. If these views prevail, a new trial must still be had, for the purpose of correcting the error of the trial court in dismissing the plaintiff's complaint as to the smaller of the two items which go to make up his claim.

McLENNAN and SPRING, JJ., concur.