(38 Misc. Rep. 173.)

WYETH v. SORCHAN et al.

(Supreme Court, Special Term, New York County. June, 1902.)

1. EXECUTOR'S SALE—RIGHT TO PURCHASE.

A wife may purchase of her mother's executors, one of whom is her husband, property of the estate they are directed to sell and divide, and acquires a marketable title, where she pays a fair price therefor out of her separate estate.

2. WILL—CONVERSION.

A will created a trust for the child of the testatrix for life, the principal on her death to be divided among the then surviving children

of the testatrix, or, if dead, their issue. The executors had power to sell and divide the property. A purchaser from the grantee of the executors refused to complete while the life tenant was living, because the children of the grantee had not been made parties to an accounting by the executors for the proceeds of the sale, and might become entitled in remainder. *Held*, that the objection was unfounded, as the proceeds of the sale under the power were personalty.

Action by Florence A. Wyeth against Charlotte B. Sorchan and others for specific performance. Judgment for plaintiff.

John R. Abney, for plaintiff.

Jay & Candler (Egerton L. Winthrop, Jr., of counsel), for defendant Sorchan.

FITZGERALD, J. This is an action for specific performance, and defendant Sorchan relies upon certain legal propositions, which, according to her contention, render the title sought to be conveyed an unmarketable one. The facts are not disputed, and are as follows: By the will of Eliza Therese Sims the realty in question was devised to the executors, in trust to sell and divide the proceeds into five equal parts, four of such parts to be paid absolutely to the children of the testatrix therein named, and the fifth part to be held in trust during the life of Eliza T. Pratt, who should receive the income thereof, the principal upon her death to be divided among the then surviving children of the testatrix, or the issue of any of them deceased. The executors, one of whom was the son and the other the son-in-law of the testatrix, made various attempts to dispose of the property (No. 267 Madison avenue), advertised it for sale extensively, and on February 24, 1892, offered it for sale at public auction at the Real Estate Exchange in this city. Various bids were made, ranging from $50,000 to $54,500. The executors, not deeming this last sum an adequate price, bid it in for $55,000. It was subsequently sought to be disposed of at private sale, but the highest figure attainable was $60,000. Three of the devisees, Mrs. Sanford, Mrs. Pratt, and Dr. Sims (who was also one of the executors), were anxious to receive their shares, and urged the executors to renewed efforts to sell the property. Plaintiff then offered $65,000 therefor, which offer was submitted to all of the other devisees named, and was considered by them a fair one. Mr. J. Romaine Brown, a real estate expert, examined upon the trial, testified that this sum was at such time a very large price for the property. The purchase money was paid by plaintiff out of her separate estate, and the executors conveyed the premises to her by deed dated April 24, 1895. She received about the same time a quitclaim deed from her brother and sisters, by which they released to her their interests. This amount of $65,000 was subsequently accounted for by the executors, and in a regular proceeding in the surrogate's court the settlement of such account was consented to by all of the parties named in the will. None of these parties have at this time living children other than Mrs. Wyeth, the plaintiff, who is the mother of three. Plaintiff, by written contract, agreed to sell and convey, and defendant Sorchan agreed to purchase, this property; but this defend-

ant now refuses to carry out her agreement, for the reasons that the deed from Dr. Wyeth, as executor to his wife, was voidable, and that this defect was not cured by the release of the devisees, as Mrs. Pratt, being only a life tenant, could but bind her limited interests, and that, as there is a possibility of the remainder vesting in the children of Mrs. Wyeth (in the event, as she contends, of Mrs. Pratt outliving Mrs. Wyeth), these children, in order to be bound by the accounting, should have been made parties thereto. The facts above set forth show conclusively that the transfer to Mrs. Wyeth was a fair and bona fide transaction, in which all the parties interested, being of full age and not disqualified, joined.

In Potter v. Sachs, 45 App. Div. 454, 61 N. Y. Supp. 426, the court said (page 457, 45 App. Div., and page 429, 61 N. Y. Supp.):

"The wife has the absolute control of her personal and real estate. She may dispose of it as she pleases, even contrary to the will of her husband. If she desires to purchase real estate, her husband has no power to prevent, as he has no control either of her actions or of her estate. Under these circumstances the reason of the rule which previously existed has entirely disappeared. There is no relation existing between husband and wife which prevents the wife from doing that which she pleases with her own. A woman is placed under no disability by reason of coverture. She is now the absolute mistress of her own property. She may invest it as she pleases; she may sell it as she pleases; and unless it is shown that some wrong has been done by her conniving with her husband, which has come or ought to have come to the knowledge of the purchaser, it seems to us that he gets a perfect title."

In Miller v. Weinstein, 52 App. Div. 533, 65 N. Y. Supp. 387, affirmed in 166 N. Y. 608, 59 N. E. 1126, the court, after reciting with approval, Potter v. Sachs, supra, said (page 537, 52 App. Div., and page 390, 65 N. Y. Supp.):

"She had means of her own with which to pay the bid made by her. She did pay the amount of the bid out of her own money to the executors of Jacob Miller, and they accounted for it as such as a part of his estate. Under such circumstances we do not think it can be seriously questioned but that a good title was obtained. If there were a single fact which cast the slightest suspicion upon the bona fides of the sale, or tended in any degree to show that she acted in collusion with her husband, or that the property was not fairly sold, then another question would be presented. But nothing of that kind appears in the submission. The whole transaction indicates that the parties acted in entire good faith, and it is not even intimated that the full value of the property was not realized; and it must be held that the title acquired is a good one."

The children of Mrs. Wyeth were not, in my opinion, necessary parties to the accounting. The power of sale vested in the executors the legal title to the property, and the proceeds of the sale must, under the provisions of the will, be regarded as personal property, to be accounted for by them as such. Rhodes v. Caswell, 41 App. Div. 229, 58 N. Y. Supp. 470; Delafield v. Barlow, 107 N. Y. 535, 14 N. E. 498. In Potter v. Sachs, supra, the property was sold at public auction, while in the case at bar it was disposed of at private sale. Either method was authorized by the will. The proof submitted of the good faith and fair dealing of the parties herein is so abundant and overwhelming that it would be straining at an immaterial point to hold that for such reason alone it should be held that

the principles there laid down are not here controlling. The plaintiff's title is a good and marketable one, and the prayer of the complaint is granted, with costs.

Judgment for plaintiff, with costs.